THE FEDERAL BETTERMENT COMPANY v. JOHN W. REEVES.

No. 14,482.     (84 Pac. 560.)

SYLLABUS BY THE COURT.

1. FOREIGN CORPORATIONS—*Managing Agent—Service of Summons.* One who has exclusive supervision and control of some department of a corporation's business, the management of which requires of such person the exercise of independent judgment and discretion, and the exercise of such authority that it may be fairly said that service of summons upon him will result in notice to the corporation, is a managing agent within the meaning of the statute providing for the service of summons upon a managing agent of a foreign corporation.

2. EVIDENCE—*Physician—Conclusions from Statements by a Patient.* A physician while testifying as an expert is not permitted to testify to his conclusions as to the permanency of an injury to his patient, based partially upon the history of the injury detailed to him by the patient or other person and partially upon his own examination.

3. FOREIGN CORPORATIONS—*Service of Process.* The various methods provided by statute for obtaining service of process on foreign corporations are cumulative.

Error from Neosho district court; LEANDER STILL-WELL, judge. Opinion filed February 10, 1906. Reversed.

*Burnham & Dashiell,* for plaintiff in error; *J. L. Denison,* of counsel.

*W. R. Cline,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: John W. Reeves recovered judgment for injuries alleged to have been sustained by him through the negligence of the defendant, the Federal Betterment Company, a corporation. The facts alleged in the petition are, substantially, that the plaintiff was working for the Morehead Manufacturing Company in its factory, situated at Morehead, in Neosho county, Kansas; that the defendant was a corporation engaged in drilling for oil and gas and in the transportation of such products by pipe-lines to consumers; that it led a pipe from its main line into the Morehead Manufacturing Company's place of business for the purpose of supplying that company with natural gas for fuel to operate its factory; that in doing so it attached thereto what is called a "Tobey meter," but negligently failed to place any regulator between the meter and the high pressure in the main line, thus permitting the high pressure in the main line to come into the lateral line in the factory; that, through the negligent acts of the defendant in carelessly, negligently and unskilfully constructing and maintaining the pipe and meter, and in failing to place a regulator between its main pipe-line and the meter in the factory where the plaintiff was working, and in using a meter which was insufficient to restrain the high pressure of the natural gas in the main line, the pressure burst the meter, causing an explosion which hurled plaintiff the distance of a rod, knocking him senseless, or into such a dazed condition that he did not realize what had happened; that the concussion was so great as to injure his ear and hearing on the side next to the explosion, and permanently to injure his left side, shoulder, and chest; and that either by

Betterment Co. v. Reeves.

reason of the explosion of the gas upon him, or by reason of being struck on the left side of his head by some missile hurled against him by the explosion, he sustained concussion of the brain, resulting in acute mania, which lasted in a severe form for several weeks, during which time he required the constant care and attention of others.    Other allegations as to the extent of plaintiff's injuries were made.

Upon the filing of this petition in the district court of Neosho county, in which county the accident occurred, a summons was issued, directed and delivered to the sheriff, upon which he made the following amended return of service:

"Received this writ May 24, 1904, and as I was unable to find the president, chairman of the board of directors or trustees, or other chief officer, or the cashier, treasurer, secretary or clerk, I served the same, as commanded therein, in my county of Neosho and state of Kansas, on the within-named defendant, the Federal Betterment Company, a corporation, as follows:    On May 21, 1904, by delivering to W. Kinney, managing agent of said Federal Betterment Company, by delivering to him personally a true and certified copy of the within summons, with all the indorsements thereon.

I. F. YOCKEY, *Sheriff, Neosho County, Kansas.*

By J. T. SMITH, *Deputy* (who was specially requested to make said service)."

The defendant appeared specially and filed the following motion to quash the summons:

"Now comes the Federal Betterment Company, appearing specially and for the purpose of this motion only, and moves the court now here to quash, vacate and set aside the pretended summons and the pretended service thereof in the above-entitled action, for the following reasons, to wit:

"(1)    Because there has been no service of summons upon the said Federal Betterment Company.

"(2)    Because there has been no service of summons upon the said Federal Betterment Company, or any authorized agent of said company.

"(3) Because said action was improperly instituted in Neosho county, Kansas.

"(4) Because said pretended summons was improvidently issued.

"(5) Because said summons and the return thereof are void and of no effect, and the court has not by the issuance of such summons obtained any jurisdiction whatever over said Federal Betterment Company."

In support of the motion defendant introduced a certified copy of its charter, showing that it was incorporated under the laws of West Virginia, which charter states that the principal place of business shall be located in the city of Topeka, Shawnee county, state of Kansas; and that its chief works shall be located in the city of Cherryvale, Montgomery county, Kansas, but that it is expected and intended by the company to have branches located at other points in the state of Kansas, and also in the state of Missouri, Indian Territory, and Oklahoma territory, and at numerous other places. It also caused to be read the affidavit of F. W. Freeman, as follows:

"Affiant is the secretary and treasurer of the Federal Betterment Company; that affiant resides in the city of Topeka, county of Shawnee and state of Kansas; that the said Federal Betterment Company is a corporation duly organized and existing under and by virtue of the laws of the state of West Virginia, and that said corporation now is, and has been for about one year last past, duly authorized to transact business in the state of Kansas, and that in said last-named state said corporation has an office at the city of Topeka, and that all the chief officers of said corporation are now and have for a long time been actual residents of Shawnee county, in the state of Kansas; that said corporation has not now and never has had any office or place of business in the county of Neosho, in said state, and that none of its officers reside therein, but that affiant is informed and believes that in the above-entitled action service of summons was attempted to be made in the above-entitled action upon the said Federal Betterment Company in Neosho county, Kansas, by delivering a pretended copy of an alleged summons to one W. Kinney; but affiant avers that said W.

Kinney was not at the time of such pretended service, had never theretofore been, and is not now, an officer or agent of said company, and said W. Kinney is not now and never has been the cashier, treasurer, secretary, clerk or managing agent of said Federal Betterment Company, and is not now and never has been a person in charge of any office of said company."

It also filed the certificate of the secretary of state of the state of Kansas showing that the charter board had authorized the Federal Betterment Company to engage in the business of mining and other pursuits, as expressed in the application, in the state of Kansas, until the certificate should be revoked, or the authority canceled.

In refutation of the proofs offered on the motion the plaintiff introduced the affidavit of J. T. Smith, a resident of Morehead, Neosho county, Kansas, which reads:

"J. T. Smith, of lawful age, being duly sworn, on his oath says:    That he resides at Morehead, Neosho county, Kansas, and that he is a user of natural gas, which he obtained from the Federal Betterment Company; that affiant is one of the proprietors of the Morehead Manufacturing Company, which said factory is located just west of Morehead, in Neosho county, Kansas; that affiant not only made contracts with said Federal Betterment Company or with its foreman and agent, W. Kinney, for the use of gas in his residence but also for gas for said factory; affiant knows that said Kinney employed all the hands and hired, worked and discharged all the men that put in the gas lines for said defendant company; that he, said Kinney, paid off all the company's hands; that he, said Kinney, made all contracts with gas users; that he put in all pipe-lines and connected the defendant's high-pressure line with the buildings of all gas users; that said Kinney collected the gas rentals due said company each month and receipted for the same in the name of said defendant company, by 'W. Kinney, its agent or managing foreman;' that said Kinney did and performed all things for and in behalf of said company in Neosho county; that said Kinney was located a part of the time each month at Morehead, Neosho

county, Kansas, in the discharge of his duties as agent and field manager of said defendant, and that he sold gas at Morehead, and collected same monthly in the name of said defendant, the Federal Betterment Company; that affiant has seen as many as twenty-five receipts given by said Kinney to Neosho county gas users prior and up to the injury of plaintiff herein, which receipts were signed in the name of the defendant company, by W. Kinney, agent and superintendent for said company.

"That said company has gas lines in Montgomery, Labette and Neosho counties, in Kansas, and affiant knows that said W. Kinney has always acted as the managing agent of said defendant company in said counties, and that, save and except said Kinney, there never was any other authorized person to represent said defendant in Neosho county; that said Kinney, the agent and superintendent of said defendant company, is the person who put in the first meter in the shop where Reeves was injured, and that affiant notified him or some of his workmen that it would not work, when he came back and said to lead the joints and then turn in the gas, that it would then be ready to use; that after Reeves's injury said Kinney came back to put in a regulator and a new meter and took out the scraps of the one that had been blown to pieces; that said Kinney always appeared as though the gas line was his or that he had supreme control of its affairs for said defendant, the Federal Betterment Company; that affiant was and is the duly appointed, qualified and acting deputy sheriff of I. F. Yockey, and that he served the summons in this action upon said Kinney as agent, foreman and representative of said defendant company, as more fully set forth in the returns on said original summons now on file in this action; that at the time said I. F. Yockey was and is the duly elected, qualified and acting sheriff of Neosho county, Kansas."

The motion to quash was denied, to which ruling the defendant excepted. Thereafter it filed its answer, and the cause was tried by the court and a jury, a verdict was returned, and a judgment rendered thereon for the plaintiff. Defendant complains.

The first alleged error is the order of the court in

denying defendant's motion to quash the summons. It contends that there is but one way by which service can be had upon a foreign corporation that has been granted permission to do business in Kansas, and that is by having the summons directed and delivered to the secretary of state, as provided in section 1262 of the General Statutes of 1901. That section reads:

"Actions against any corporation organized under the laws of any other state, territory or foreign country, and doing business in this state, may be brought in any county where the cause of action arose or in which the plaintiff may reside. The summons shall be directed to the secretary of state, and shall require the defendant to answer by a certain day, not less than forty days nor more than sixty days from its date. Said summons shall be forthwith forwarded by the clerk of the court to the secretary of state, who shall immediately forward a copy thereof to the secretary of the corporation sued; and thereupon said secretary of state shall make return of said summons to the court whence it issued, showing the date of its receipt by him, the date of forwarding such copy, the name and address of the person to whom he forwarded said copy, and the costs for service and return thereof. Such return shall be under his hand and seal of office, and shall have the same force and effect as a due and sufficient return made by the sheriff on process directed to him."

To this contention we do not agree. Section 4504 of the General Statutes of 1901 provides that "where the defendant is a foreign corporation, having a managing agent in this state, the service may be upon such agent." The defendant is a foreign corporation, and service of process may be had on such persons in any of the ways provided by statute. It might have been had, as contended by the defendant, by delivering the summons to the secretary of state; but this is not the only way. Service might possibly have been made in this particular case by delivering the summons to any of its officers residing in the state, under section 4483

8—73 KAN.

of the General Statutes of 1901. Section 4504 provides an additional way. None of these provisions is exclusive of the others. Where there are several methods for obtaining such service the plaintiff may select any one. The corporation cannot complain that he did not select some other equally good way. Statutes which provide for service of process on foreign corporations should be liberally construed for the accomplishment of the purpose intended, namely, that of bringing such persons into court. They are permitted to enter the state by comity only, and in the methods of subjecting them to the jurisdiction of the courts they cannot insist upon a technical or strict construction in their favor. If, therefore, the non-resident defendant corporation had a managing agent in the county of Neosho, where the action was brought, service could have been had on the corporation by serving the summons on such managing agent in that county. The question then is, Was W. Kinney the managing agent of the defendant? This is a question of fact, and it must be determined from the affidavits of Freeman and Smith.

It will be observed that the affidavit of Mr. Freeman on the question of agency is very general in terms. The specific statement is: "But affiant avers that said W. Kinney was not at the time of such pretended service, had never theretofore been, and is not now, an officer or agent of said company." This is but the statement of Mr. Freeman's conclusion. It is not a detailed statement of what Kinney's duties to the corporation were. The court was not given the facts as Mr. Freeman understood them, from which it could have arrived at a conclusion; instead of doing this the affiant gave his conclusion, and he may have believed that Kinney was not, as he expressed it, the "agent of said company." He may have believed that it required the appointment of the board of directors to constitute Kinney a managing agent of the company, and being secretary he knew this had never been done.

The affidavit of Smith was a detailed statement of the acts performed by Kinney for the company, from which the court below concluded that Kinney was the managing agent of the company, within the meaning of the section of the statute authorizing the service of summons on a managing agent of a foreign corporation, and in this we think the court was correct.

Whether one is a "managing agent" of a foreign corporation on whom service of summons may be made must depend in every case upon the kind of business conducted by the corporation, what the general duties of the supposed "managing agent" are, and whether it can be fairly said that service on such agent would bring notice to the corporation. Much discussion may be found in the cases upon this question, and it is one upon which there is some disagreement. It may be said, however, that the later decisions are more liberal in interpreting the term "managing agent" than were the earlier ones. While no general rule can be stated which will serve as a test, certain principles may be announced which will serve to assist in determining the matter. Such managing agent must be in charge, and have the management, of some department of the corporation's business, the management of which requires of the agent the exercise of an independent judgment and discretion; not that he shall not be under the general direction of the corporation—all agents are subject to the general control of their principals—but in the management of his particular department he must have authority to manage and conduct it as his discretion and judgment direct. He must be in the exclusive and immediate control and management of that department, or of the entire works conducted at the place where he is in charge. In *Porter v. The Chicago and Northwestern Railway Company*, 1 Neb. 14, it was stated in the first subdivision of the syllabus:

"An agent invested with the general conduct and control, at a particular place, of the business of a corporation, is a managing agent, within the seventy-fifth

section of the code, upon whom a summons may be served. It is immaterial where he resides."

In *Coler et al. v. P. B. Co.*, 146 N. Y. 281, 40 N. E. 779, the court said:

"It is not necessary that the office of the person to whom the summons is delivered, in a suit against a foreign corporation, should be precisely described as that of 'a managing agent;' because, as we think, from the language of section 432 of the code of civil procedure, it was intended that any person holding some responsible and representative relation to the company, such as the term 'managing agent' would include, might be served with the summons." (Page 283.)

In the case of *American Express Company v. Thomas Johnson*, 17 Ohio St. 641, the question came up on the alleged insufficiency of the service of the original summons. The court said:

"At the time of service the company had a general 'superintendent' for the state, residing at Cleveland, and two or more 'local agents' in the county of Madison; one of whom resided at London, in said county, and kept an office there, where he received and forwarded packages for the company, and did all the business of the company usually transacted in such receiving and forwarding offices. Service was made upon the said agent at London alone; and the question is, whether he was the 'managing agent' of the company, within the meaning of the sixty-eighth section of the code? We think he was such managing agent, and that the service was sufficient."

In *Brewster v. The Michigan Central Railroad Company*, 5 How. Pr. (N. Y.) 183, the court said:

"The managing agent upon which the summons may be served must be one whose agency extends to all the transactions of the corporation; one who has or is engaged in the management of the corporation, in distinction from the management of a particular branch or department of its business." (Page 186.)

This language was referred to and criticized in *Hat-*

Betterment Co. v. Reeves.

*sweat Manuf'g Co. v. Davis Sewing-machine Co.,* 31 Fed. 294, 295, as follows:

"The language quoted is much broader than that used in the subsequent cases, and was not necessary to the decision of the case; since it appeared that the alleged agent was employed with very limited powers, in connection with a very small part of the defendant's business. . . . The adjudications in the state courts have not gone so far as to hold that no agent is a 'managing agent' who does not participate in the management and control of *every part* of the corporate business, and of every corporate act. Still less has such a construction of these words been given in any local action like this, where that construction would defeat justice, and enable a corporation systematically to violate the law with impunity. Such a construction, it seems to me, would be unreasonable, and presumably foreign to the intent of the statute, when the words 'managing agent' are equally capable of including a case of the management and control of that department of the company's business out of which the wrongs proceed."

This question was before the court in *Reddington v. Mariposa L. & M. Co.,* 19 Hun (N. Y. Supr. Ct.) 405, where it was said: ,

"It is quite clear that the legislature attached importance to the term *managing agent,* and employed it to distinguish a person who should be invested with general power, involving the exercise of judgment and discretion, from an ordinary agent or employee who acts in an inferior capacity, and under the direction and control of superior authority, both in regard to the extent of the work and the manner of executing the same. The distinction thus attempted to be drawn we deem reasonable, and in harmony with the obvious purpose of the statute in regard to the service of process upon a foreign corporation." (Page 408.)

A more serious question arises upon the objections to certain testimony of Dr. C. C. Surber, who testified as follows:

"(9) Ques. Did you learn at that time from Reeves, or his attendants, that he claimed to have re-

ceived a violent injury to the left side of his head, about December, 1903, from the explosion of a gas-meter? Ans. Yes, sir."

"(3) Q. Could such an injury as Reeves claimed to have received produce such a condition as you found at that time in his case? A. Yes, sir."

"(6) Q. From the history of the case, as you learned it, and from your diagnosis of the case, taking into consideration Reeves's age and his general condition, do you consider the injury to his left ear and the left side of his head of a permanent or temporary character? A. I would say a permanent."

The witness was an expert who, under the rules of evidence, might give his opinions based either upon facts testified to by others or upon hypothetical questions put to him, or upon an examination of the patient, but he could not testify to conclusions arrived at from the history of the case given him by the patient or others. Such testimony would be as completely within the rule against hearsay evidence as if sworn to by one not an expert. Nor can a physician give his opinion based partially upon what he has been told of the case and partially upon what information he obtained by an examination of the patient. Questions and answers 9, 3 and 6 fall fairly under the objection that the answers were based partially upon a personal examination and partially upon the statements of others. (*A. T. & S. F. Rld. Co. v. Frazier,* 27 Kan. 463; *Heald v. Thing,* 45 Me. 392.) A physician may testify to the condition of the patient as he found him, whether suffering from pain, and to utterances or exclamations of pain, and he may also give the patient's statement as to the location of the pain causing such exclamations; and this because it can be said to be a part of his examination.

There are numerous assignments of error. Objections were made in some instances to nearly every question asked of a witness, many of which are frivolous. An examination of all of the assignments satisfies us that no error was committed, except as sug-

Betterment Co. v. Reeves.

gested. For this reason the judgment is reversed, and the cause remanded.

JOHNSTON, C. J., BURCH, MASON, SMITH, GRAVES, JJ., concurring.

PORTER, J. (dissenting) : I dissent from the statement of law in the second paragraph of the syllabus. I think an attending physician is competent to testify, unless the matter is privileged, to his conclusions with reference to the character and extent of a patient's complaint or injury, and to base his opinion upon his examination and treatment in connection with the "history of the case" obtained from the patient. If the patient relates to him the manner in which he was injured, and even the details of the accident, it is not to be presumed that the physician permits such statements to affect his opinion of the character and extent of the injury. Some part of his professional opinion is necessarily based upon statements of the patient in answer to his questions. If he is a competent physician his technical knowledge will prevent the patient from imposing upon his credulity. (*Block v. Milwaukee Street R. Co.,* 89 Wis. 371, 61 N. W. 1101, 27 L. R. A. 365, 46 Am. St. Rep. 849; *Quaife and wife v. The Chicago & Northwestern R'y Co.,* 48 Wis. 513, 4 N. W. 638, 33 Am. Rep. 821; *The Louisville, New Albany and Chicago Railway Company v. Snyder,* 117 Ind. 435, 20 N. E. 284, 3 L. R. A. 434, 10 Am. St. Rep. 60; *Barber and wife v. Merriam,* 93 Mass. 322, 325; Rogers, Exp. Test. § 47, and cases cited.) A different rule obtains where the physician is consulted solely for the purpose of having him become a witness. (*Stewart and another v. Everts,* 76 Wis. 35, 44 N. W. 1092, 20 Am. St. Rep. 17.). In this case, while the questions asked the physician were somewhat broader than necessary, he was competent to testify as an expert from his examination and treatment, and it does not appear that the error was prejudicial.