[Civ. No. 14986.    First Dist., Div. Two.    Jan. 27, 1953.]

JENNIE ABNEY, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Ernest I. Spiegl for Appellant.

Dion H. Holm, City Attorney, and Lawrence S. Mana, Deputy City Attorney, for Respondent.

GOODELL, Acting P. J.—This appeal is from a judgment entered on a verdict for defendant in an action for personal injuries. A new trial was denied.

Appellant was a passenger on a municipal bus traveling easterly on Visitacion Street approaching its intersection with Brittain Street in San Francisco, when it came to a sudden stop which threw the passengers forward against the seats in front of them. Appellant, who was seated in the middle of the long seat at the rear of the bus (with no seat in front of her) was thrown into the aisle, and in falling her head struck a part of the bus.

Appellant's first contention is that the evidence is insufficient to justify the verdict.

■ This admittedly is a res ipsa loquitur case, and it was tried as such. Under that rule, once it was proved that the bus came to a sudden stop the burden of explanation was on the respondent. It appeared in evidence that the brakes had been "slapped on" to avoid hitting a boy on a scooter, who had darted out from the curb into the street and was headed directly toward the bus. With that evidence before the court it became the function of the jury under the rule "to weigh all the evidence and to determine therefrom whether the inference of negligence had been rebutted and whether plaintiff had sustained the burden of proving the negligence of. defendants by a preponderance of all the evidence." (*Renzetti* v. *Los Angeles Motor Coach Co.*, 48 Cal.App.2d 37, 39 [119 P.2d 164].)

■ Appellant concedes that "the act of the child running into the path of the bus, was *a* proximate cause of the accident." Whether it was the *sole* proximate cause was a question of fact for the jury to decide in the light of all the evidence and particularly the testimony as to the speed of the bus, the operator's control over it, and all his acts and conduct immediately before and at the time of the application of the brakes.

It is to be implied from the verdict that the jury decided that the boy's act in darting out from the curb (which precipitated the sudden stop) was the sole cause of the accident. Had the jury concluded that the driver had not held his bus under proper control, or that he should have slackened its speed earlier in view of his admission that he saw the children over a block away, and that these or any other acts or omissions were contributing causes, the verdict doubtless would have been against the respondent, since the jury was instructed that: "If you find that some negligent act or omission of the defendant . . . and some negligent act or omission of any other person or persons, were, either jointly or concurrently, the proximate cause of plaintiff's injury, then in such event it makes no difference that the negligence of one was greater or less than the negligence of the other; and in such event plaintiff may recover from the defendant . . ."

That instruction was followed immediately by another which summarily removed from the jury any consideration of plaintiff's contributory negligence. It told them that "no conduct on her part constitutes a defense against such negligence, if any, which you may find chargeable to the defendant . . ."

■ There is sufficient evidence to support the verdict and there is nothing to differentiate this case from the usual personal injury case, or to convert its plain questions of fact into questions of law. In *Aboudara* v. *City and County of San Francisco,* 114 Cal.App.2d 630 [251 P.2d 32], this court had before it a similar case, where a woman passenger was thrown to the floor of a municipal bus when it was brought to a sudden stop in avoiding a collision with an automobile. Therein we said: "Whether in so stopping [the driver] acted in a manner which was reasonably prudent for the safety of his passengers was a question of fact for the trial court. The court below having answered the question in the affirmative, this court is bound by its determination." Numerous cases are collected therein to which attention is directed.

■ Since there is ample evidence to support the verdict it follows that appellant's second contention, namely, that her motion for a directed verdict should have been granted, must be rejected.

Appellant's third point is that "The verdict can only be explained upon the ground that the jury was misled by prejudicial error committed by the trial court in its rulings on evidence and when instructing the jury."

The first assignment concerns the testimony of Mrs. Adele Rosenberger and her sister-in-law Mrs. Ruth Rosenberger, who also were passengers, witnesses for appellant, and each of whom filled out one of the city's questionnaire forms. Appellant says: "Under the guise of impeaching something said by the witnesses on direct examination, counsel produced these statements and, over the objection of appellant, placed before the jury the witnesses' opinions as to what transpired outside of the bus, as well as their opinions as to the respective fault of driver and children."

■ The only expression of Adele Rosenberger's opinion was not in the presence of the jury but was contained in her answer, in the negative, to the printed question in the city's form: "In your opinion were bus employees in any way at fault?" To another question therein she answered "Two children running in front of bus and sudden stopping." She was questioned in court as to whether she had actually seen the children running in front of the bus and answered that she had not. During her cross-examination there were attempts by the defense to read from the questionnaire, which brought prompt objections from appellant. Counsel for respondent confronted her with her statement in the questionnaire: "Bus

was under way, when two children ran in front of bus,'' and she answered: ''I did not see them run in front; I saw them on the sidewalk.'' Respondent then offered the questionnaire and over appellant's objection that it was not proper impeachment it was admitted.

Nothing whatever was brought out on the examination of this witness to attract the jury's attention to her expression of opinion in the questionnaire. While technically it might have been error to admit the document, we are satisfied that such error, if any, was harmless under the circumstances.

█ The questionnaire of Mrs. Ruth Rosenberger was not offered in evidence. When the defense sought to read therefrom the court, on appellant's objection, required respondent to point directly to the impeaching matter and it turned out, again, that this witness did not see the children run in front of the bus, and did not know where they came from. The following colloquy then ensued:

''Mr. Spiegl: We have no objection if he wants to ask her whether she previously stated she had seen the children run in front of the bus; I have no objection to that question.

''The Court: Read that statement.

(Statement read by Mr. Mana.)

'' 'Two small children ran in front of the bus. The driver is not at fault. He stopped bus to avoid hitting the children. And as he did the lady was thrown off her seat. I thought at the time the lady was hurt as she hit her head but I am sure the driver did not know she was thrown from her seat until I called his attention to it. I feel he is not to blame.'

''Mr. Spiegl: I object to that.

''The Court: The objection is overruled. Read that portion that you say applies to impeachment.

''Mr. Spiegl: The statement is full of conclusions. I think he should limit himself to an impeaching question and lay the foundation for that question . . .

''The Court: 'You don't know where they came from.' Now, then, you want to impeach that testimony?

''Mr. Mana: Yes, your Honor.

''The Court: Very well.

''Mr. Mana: Q. You stated at that time, did you not, Mrs. Rosenberger, that 'Two small children ran in front of the bus. The driver is not at fault.'

''Mr. Spiegl: Now, if your honor please ——

''The Court: Now, that is objectionable—Wait a minute.

''Mr. Spiegl: I will ask ——

"The Court: The jury is instructed to disregard that particular statement read by counsel. Now, you should not do that, counsel, especially in the face of the objection now. The jury is instructed to disregard that . . .

"The Court: No speeches. Ask her with respect to that particular testimony that you wish to impeach. Have you already asked that?

"Mr. Mana: Yes.

"The Court: All right. That is all.

"Mr. Mana: I think another portion is relevant, your Honor.

"Q. You also said at that time, 'He stopped bus to avoid hitting the children', is that correct?

"A. To my best knowledge.

"Mr. Spiegl: That is objected to as incompetent, irrelevant and immaterial.

"The Court: I am instructing the jury to disregard it, that is not by way of impeachment at all; she said nothing of that kind this morning that I can recall . . . The jury is instructed to disregard that question, and the answer is stricken out."

The court thus made it clear to the jury by prompt and positive rulings that that part of the written statement which gave her opinions and conclusions was stricken out and had to be disregarded. Then at the conclusion of the case the usual instruction was given respecting testimony to which objections had been sustained and answers stricken out.

We find no error in connection with Mrs. Ruth Rosenberger's testimony.

█ Appellant next complains that the cross-examination of Still, the driver of the bus, was unnecessarily curtailed. On direct examination he testified that he left respondent's employ shortly after the accident. On cross-examination he was asked whether such termination was voluntary, to which the court sustained an objection. Appellant says "It was appellant's desire to explore this situation to determine whether or not the termination of employment was due either to Still's faulty driving in connection with this accident, or to his general incompetence as a driver." The ruling was proper.

█ Respondent's objection to the question to the driver whether it was his custom to slacken his ordinary speed when young children were on the street in front of him was likewise properly sustained. No authority is cited supporting the attack on that ruling.

■ Appellant next claims that she should have been permitted to examine the driver as an adverse witness under section 2055, on the novel theory, unsupported by authority, "that, as driver of the bus he was the managing agent of the defendant for all purposes connected with the trip of that bus." Section 2055 at the time of trial provided that the managing agent of a party could be so examined, but a bus driver is not a managing agent.

Five claims of error are made on instructions given and seven on instructions refused. *Only once is authority cited in support of these twelve attacks.* '

■ (a) The court gave the usual instruction that "A mere surmise or conjecture that there may have been negligence on the part of defendant does not entitle the plaintiff to a verdict." It is claimed that such an instruction was improper because this was a res ipsa loquitur case. However, the instruction was followed almost immediately by one adequately explaining that doctrine and there could have been no confusion since there was no conflict or inconsistency between the two.

■ (b) Appellant complains of three instructions which told the jury that it was the duty of the bus to stop, if necessary, to avoid hitting a pedestrian. This complaint is made notwithstanding appellant's concession in so many words, that "when the child ran into the street, his [the driver's] only course was to stop the bus." The third instruction of this series concluded with the following: "You may not find the bus driver guilty of negligence in stopping or reducing the speed of his bus, if traffic conditions required him to reduce speed and stop *and if he otherwise exercised the degree of care required by law.*" (Emphasis added.) Appellant's argument on this point is not at all persuasive and no authority is cited.

■ (c) The jury was instructed "that the prima facie speed limit at the time and place of this accident was twenty-five miles per hour." It is claimed that this was misleading, first, because "the entire theory of the case was based upon the question of whether the driver was or was not proceeding too fast in light of the presence of the children—and not in light of any statutory requirement." Secondly, it is claimed to be "prejudicial in that it fails to explain that the prima facie limit is inapplicable during the last 100 feet before the intersection" citing section 511 Vehicle Code. That sec-

tion contains no such provision. The instruction was properly given.

■ (d) An instruction on imminent peril was given in the usual form. Its language is not criticized but it is claimed that no such instruction at all should have been given. This is the only one of the twelve attacks on instructions where authority is cited (*Vedder* v. *Bireley,* 92 Cal.App. 52 [267 P. 724] and *Van Fleet* v. *Heyler,* 51 Cal.App.2d 719 [125 P.2d 586]). Neither case is in point. In each case the court found error in the very *language* of the instructions and in the Van Fleet case sudden peril instructions were held to create confusion because it was a wilful misconduct case. Appellant concedes that when the child ran into the street the driver's only course was to stop the bus, but says that the driver's negligence must be determined upon his failure to slow down sooner. This is an argument which should have been, and doubtless was, addressed to the jury. The defendant was entitled to the instructions. In *Dodge* v. *San Diego Etc. Co.,* 92 Cal.App.2d 759, 767 [208 P.2d 37], which also was a case where the plaintiff, a bus passenger, was injured because of the sudden stopping of the bus to avoid a collision, the giving of an imminent peril instruction was held proper.

■ (e) Lastly appellant attacks an instruction reading: "The California Vehicle Code recognizes that a sudden decrease of speed of a vehicle may be necessary. You are instructed that a sudden decrease of speed of a vehicle is not necessarily negligence. If the driver of the bus was exercising all of the care required by law, and, without fault on his part, was confronted with a situation requiring him suddenly to decrease his speed and stop, he would not necessarily be chargeable with negligence in so doing."

The argument against this instruction is the same as that on imminent peril. It is not convincing.

We find no error in the instructions discussed above.

The seven claims of error in refusing instructions tendered by appellant are as follows:

(a) The court rejected four instructions on preponderance of the evidence. The court instructed that in a civil case "the preponderance of evidence is what is required. By preponderance of evidence is meant such evidence as when weighed to that opposed to it has more convincing force . . . If the evidence in your judgment is equally balanced in weight, quality, effect and value, so that the scales of proof hang even, your verdict should be against the party upon whom rests the bur-

den of proof." The four tendered instructions (1) told the jury that slight preponderance sufficed; (2) discussed circumstantial evidence; (3) pointed out the difference between reasonable doubt and preponderance, and (4) told the jury that plaintiff was entitled to a verdict if she met her burden. It is of course usual and proper for each side to propose instructions drawn to their own pattern, but it is not error to refuse them if the court gives adequate instructions on the subject. In our opinion the instructions given on preponderance of the evidence were adequate hence there was no error in rejecting the four so tendered.

(b) The court rejected four of plaintiff's instructions (5, 6, 7 and 9) on res ipsa loquitur. What has just been said with respect to instructions drawn to a pattern most favorable to one's side applies here as well. The court gave an instruction on this subject which in our opinion adequately defined and explained the rule. The first two sentences thereof read exactly the same as the first two sentences of plaintiff's 5. Plaintiff's 6 gave the English translation of the Latin phrase but the court gave the same translation. Plaintiff's 7 covered the highest degree of care rule but the court gave two instructions on this subject which, together, were in substantially the language of section 2100 Civ. Code. The language of plaintiff's 9 is not too clear, and it added nothing substantial to the res ipsa loquitur instruction which the court gave.

We might add that the authorities sometimes use the words "inference" and "presumption" of negligence indiscriminately in res ipsa loquitur instructions. (See discussions in *Crooks* v. *White*, 107 Cal.App. 304, 310-311 [290 P. 497], *Anderson* v. *I. M. Jameson Corp.*, 7 Cal.2d 60, 66-67 [59 P.2d 962], and *Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724, 734 [81 P.2d 950, 118 A.L.R. 533].) The instruction which the court gave used much plainer language (see comments in Mudrick case, p. 734, *supra*, respecting laymen). Instead of using "inference" or "presumption" it said "it affords *reasonable evidence*, in the absence of explanation by the defendant, that the accident arose from a want of care." (Emphasis added.)

We find no error in the rejection of these four instructions.

(c) While complaining of the refusal of her proposed instructions 12, 12C, 12D and 12E, appellant concedes that they were "partially repetitious" and that parts of each of them were given.

(d) It is asserted that there was error in refusing to give part of plaintiff's 17 on joint or concurrent negligence. We have already quoted the part of this instruction which was given and are satisfied that it was sufficient, without more, to properly inform the jury on the subject.

(e) Plaintiff's 19A and 19B dealt with the carrier's duty to maintain adequate equipment, the argument being that had there been a railing in front of the rear seat appellant would not have fallen. There was no issue on faulty or defective equipment hence there is no merit in this assignment.

(f) and (g) Plaintiff's 28, 30 and 31 dealt with the duty to anticipate the presence of young .children in the street. They were lengthy and somewhat argumentative, and the subject was adequately covered by the other instructions.

A careful study of the instructions given in this case satisfies us that the jury was fully and fairly informed on all the legal rules applicable to the facts. In our opinion no injustice could have resulted from the refusal of any of the instructions just reviewed.

We find no merit in any of appellant's contentions.

The judgment is affirmed.

Dooling, J., and Jones, J. pro tem., concurred.

A petition for a rehearing was denied February 26, 1953.