92 So.2d 160 (1955)
SEABOARD AIR LINE RAILROAD COMPANY, a Corporation, Appellant,
v.
C.D. FORD, Appellee.
Supreme Court of Florida. Special Division A.
October 19, 1955.
On Rehearing November 7, 1956.
Rehearing Denied February 5, 1957.
*161 Walter Humkey, Henry Burnett, Hervey Yancey and Fowler, White, Gillen, Yancey & Humkey, Miami, for appellant.
Nichols, Gaither, Green, Frates & Beckham, William S. Frates, William R. Colson and Sam Daniels, Miami, for appellee.
ROBERTS, Justice.
The plaintiff, an employee of the defendant railroad company, developed a skin disease in 1947. He consulted several doctors and was informed that he probably had an occupational contact dermatitis, but the specific cause was not determined until *162 1951. At that time, the plaintiff accidently spilled on his bare skin a rust inhibitor known as "Nalco", supplied to plaintiff by defendant for use in his work, and the skin disease was then diagnosed as contact dermatitis from the use of chromate compounds. The instant suit was filed in 1953 under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., based on defendant's negligence in failing to provide him with a safe place and safe materials with which to work. The defendant denied negligence and pleaded the three-year statute of limitations contained in Section 56 of the above Act. The defendant's motion for summary judgment as to that portion of plaintiff's claim which arose more than three years prior to the institution of suit was denied, trial was had before the jury, and a verdict in the amount of $47,500 was returned in favor of plaintiff. Defendant's motion for new trial was denied, and this appeal followed.
First, as to the effect of the three-year limitations provision of the Act: It was held by the Supreme Court of the United States in Urie v. Thompson, 1939, 337 U.S. 163, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282, that the statute would not begin to run on a cause of action based on the occupational disease of silicosis until the plaintiff knew he had the disease. The court said in that case, as against the contention that the statute began to run when he contracted the disease:
"We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights. The record before us is clear that Urie became too ill to work in May of 1940 and that diagnosis of his condition was accomplished in the following weeks. There is no suggestion that Urie should have known he had silicosis at an earlier date."
In City of Miami v. Brooks, Fla. 1954, 70 So.2d 306, 309, we were concerned with a cause of action based on negligence in the use of an X-ray machine, where the injurious effects of such negligence did not appear until after the running of the statute of limitations there applicable. In holding that the action was not barred, this court cited with approval the Urie case, supra, and said:
"In other words, the statute attaches when there has been notice of an invasion of the legal right of the plaintiff or he has been put on notice of his right to a cause of action. * * * To hold otherwise, under circumstances of this kind, would indeed be a harsh rule and prevent relief to an injured party who was without notice during the statutory period of any negligent act that might cause injury."
This court has consistently followed the decisions of the United States Supreme Court in its interpretation of the Act in question, Seaboard Air Line R. Co. v. Strickland, Fla. 1955, 80 So.2d 914; and we think it must be held, under the authority of the Urie case, supra, as well as the decision of this court in the City of Miami case, supra, that no part of the plaintiff's claim was barred by the statute. This must be so, because the plaintiff had no notice that there had been an invasion of his legal right to have a reasonably safe place and reasonably safe materials with which to work, until the particular irritant causing the dermatitis was isolated and diagnosed. The mere fact that the plaintiff developed an occupational disease does not impose a liability upon the defendant to respond in damages. The basis of defendant's liability under the Federal Employers' Liability Act is its negligence, Seaboard Air Line R. Co. v. Strickland, supra, 80 So.2d 914; and until the exact deleterious substance causing the disease, and the circumstances surrounding the supplying and use of same, are known to plaintiff, he cannot know whether he has a cause of action against the defendant on account of its negligence in the matter; and, a fortiori, he can neither state nor prove a cause of action *163 against the defendant until such facts are known to him.
The plaintiff apparently used due diligence in trying to discover the exact cause of his skin condition, and no showing is made that he should have known the cause of his condition at an earlier date. We hold, therefore, that the statute did not begin to run against plaintiff's claim until the diagnosis isolating chromium compounds as the cause of his disease was made, and that no part of his claim is barred by the statute.
The case relied on by defendant, Pittsburgh Plate Glass Co. v. State Industrial Commission, 1948, 200 Okla. 281, 192 P.2d 1015, is not applicable here because it was a workmen's compensation case, and negligence of the employer is not required to be shown in order to recover workmen's compensation under such Acts.
The defendant also complains here of errors of the trial judge in refusing certain instructions requested by it, in the admission of certain evidence, and in allowing counsel for plaintiff to call defendant's employees as its witnesses under Rule 37, 30 F.S.A. and to cross-examine and impeach them. It is also contended that remarks of counsel for the plaintiff and the trial judge were prejudicial. Insofar as the question of liability is concerned, these errors, if any, must be held harmless in view of the uncontradicted evidence from which the jury could have found that the defendant was negligent in supplying the plaintiff with "Nalco" under the circumstances shown by the record; and we think no useful purpose would be served by submitting to another jury the question of the defendant's negligence. Accordingly, the judgment appealed from is affirmed as to the liability of defendant.
It is also contended that the court erred in admitting into evidence the mortality tables and in instructing the jury on permanent injuries. This contention must be sustained.
It is well settled that the mortality tables are not admissible in the absence of evidence of permanent injury, Ward v. Stanley, 1938, 130 Fla. 642, 178 So. 398; Atlanta & Saint Andrews Bay R. Co. v. Pittman, 130 Fla. 624, 178 So. 297. The evidence showed that, at the time of trial, the plaintiff's dermatitis had cleared up completely. It was shown by plaintiff's expert witnesses that plaintiff still had a sensitivity to chromate compounds and that he was suffering from an anxiety tension state  or "nervousness", in lay language  contributed to in large part by the dermatitis. But no witness would venture an opinion as to how long either the sensitivity or the nervousness would last; no witness said that there was even a possibility that these injuries were permanent. In such case, we think the plaintiff has failed to carry his burden of showing permanent injuries. As stated in Saucer v. City of West Palm Beach, 155 Fla. 659, 21 So.2d 452, 455, in another context: "If the doctors who treated appellant do not say there is any permanent injury, the jury composed of laymen certainly could not be expected to say there was such injuries; if they did it would be reversible error."
It was, then, error to admit in evidence the mortality tables and to charge the jury that they could be considered in determining the plaintiff's damages for impairment of his earning capacity  since this charge certainly implied that plaintiff's earning capacity had been permanently impaired, for which, as noted, there was no evidentiary basis. It might also be stated, parenthetically, that we can find in the record no direct evidence that plaintiff's earning capacity will be even temporarily impaired by his "nervousness" and sensitivity to chromate compounds.
Since the judgment must be reversed for a new trial on the question of damages for the reason stated above, no useful purpose would be served in discussing the question of the excessiveness of the verdict, also argued here by defendant.
For the reasons stated, the judgment is affirmed insofar as the question of liability is concerned, but is reversed and remanded for a new trial on the question of damages alone.
Affirmed in part and reversed in part.
*164 DREW, C.J., and TERRELL and BARNS, JJ., concur.

On Rehearing Granted
PER CURIAM.
On rehearing granted, we have reconsidered the question of whether the lower court erred in denying defendant's motion for summary judgment as to that portion of plaintiff's claim which arose more than three years prior to the institution of suit. We have concluded that our former opinion in this respect was error, insofar as it held that the three-year limitations period would not begin to run on a cause of action for an occupational disease until a diagnosis had been made of the exact cause of such disease, even though the disease had manifested itself and been diagnosed as occupational.
Neither City of Miami v. Brooks, Fla. 1954, 70 So.2d 306 nor Urie v. Thompson, 1939, 337 U.S. 163, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282, relied upon in our former opinion as authority for the ruling in question, decided the question of whether it was the time of the diagnosis or the time when the disease first manifested itself that started the running of the statute of limitations. In Urie, the diagnosis of silicosis was made shortly after the plaintiff became disabled from the disease, and the plaintiff's suit was filed within three years of both the diagnosis and the disability. In City of Miami 70 So.2d 309], the plaintiff's suit was filed within the statutory period from the date the injury first manifested itself, and we said that "the statute attaches when there has been notice of an invasion of the legal right of the plaintiff or he has been put on notice of his right to a cause of action. * * *" (Emphasis added.) Thus, our former opinion went beyond the holdings in City of Miami and Urie; and, as noted, we have decided that it was not justified either under those decisions or under the general principles of law relating to limitations of actions for personal injuries.
Generally, in actions for personal injuries resulting from the wrongful act or negligence of another, the cause of action accrues and the statute begins to run from the time when the injury was first inflicted, and not from the time when the full extent of the damages sustained has been ascertained. Cf. Cristiani v. City of Sarasota, Fla. 1953, 65 So.2d 878; 54 C.J.S. Limitations of Actions, § 174, p. 141. The rule of Urie and similar cases dealing with limitations of actions for occupational diseases was developed as an exception to the general rule because of the fact that such diseases may exist unrecognized for a long time and under a judicial determination that the legislature could not have "intended such consequences to attach to blameless ignorance." Urie v. Thompson, supra, 337 U.S. 163, 69 S.Ct. 1018, 1025. See also the comment of the annotator and cases cited in 11 A.L.R.2d p. 279 et seq., for a discussion of this theory and others developed by the courts to avoid the impact of the general rule in occupational disease cases. The United States Supreme Court said in the Urie case that "`the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves, * * *'" quoting Associated Indemnity Corp. v. Industrial Accident Commission, 124 Cal. App. 378, 12 P.2d 1075, with approval. In City of Miami v. Brooks, supra, 70 So.2d 306, we adopted the theory of the Urie case and applied it in a non-occupational disease case where there was no visible traumatic injury at the time of the negligent act nor other circumstances by which plaintiff could have "been put on notice of his right to a cause of action * * *" at that time. And it must be held, under those decisions, that until an occupational disease has manifested itself, there has been no "injury" to start the running of the statute. But we have concluded that when the existence of a disease of the kind here involved (contact dermatitis) *165 is manifested and its nature as an occupational disease is fairly discoverable, the statute begins to run, even though the exact substance causing the disease has not been determined. This is so because when the disease manifests itself, the employee has been "injured" so as to start the running of the statute, Urie v. Thompson, supra; and if the employee knows or should know that his disease is occupational in origin, he "has been put on notice of his right to a cause of action", City of Miami v. Brooks, supra, and can no longer rely on "blameless ignorance" as tolling the running of the statute. Cf. Consolidation Coal Co. v. Dugan, 1951, 198 Md. 331, 83 A.2d 863, 854.
To summarize, we hold that when an employee under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., develops an occupational disease as a result of the negligence of his employer, the statute of limitations begins to run from the time that the employee knows or should have known that the disease was occupational in origin, even though diagnosis of the exact cause has not yet been made; and if his suit is filed within three years from that time, the employee can recover for all the injuries suffered by reason of the negligence of his employer and is not limited to the three-year period immediately preceding the filing of suit. Urie v. Thompson, supra. The question of when the employee knew or should have known that he had an occupational disease is one of fact and thus ordinarily to be determined by the jury. James v. Pennsylvania R. Co., 3 Cir., 1952, 196 F.2d 102, citing Urie v. Thompson, supra.
For the reasons stated, we hereby recede from so much of our former opinion as is inconsistent with the opinions above expressed. It is not, however, necessary to decide whether error has been made to appear in the trial judge's disposition of the defendant's motion for summary judgment, since the judgment appealed from must be reversed on the question of liability, as well as on the question of damages, for reasons hereinafter stated. The question of whether the plaintiff has a right to compensation for his injuries or aggravation thereof, traceable to his employment during the three-year period immediately preceding the filing of suit, is not presented here. See, however, Seaboard Air Line Railroad Company v. Holt, Fla., 92 So.2d 169, on this question.
We have also re-examined the question of whether the defendant is entitled to a new trial on the question of liability as well as on the question of damages because of alleged errors in the conduct of the trial, referred to briefly and without elaboration in our former opinion. We are now persuaded that, even though there was competent substantial evidence to support a verdict in favor of plaintiff and even though each of the alleged errors, standing alone, could be considered harmless, the cumulative effect of such errors was such as to deny to defendant the fair and impartial trial that is the inalienable right of all litigants in this state and this nation. A jury's verdict must be based on an unimpassioned evaluation of relevant, material evidence "`uninfluenced by the appeals of counsel to passion or prejudice.'" Seaboard Airline Railroad Co. v. Strickland, Fla. 1956, 88 So.2d 519, 524, citing New York Central R. Co. v. Johnson, 279 U.S. 310, 49 S.Ct. 300, 73 L.Ed. 706. It goes without saying that a trial is not a sparring match between opposing counsel, with the jurors acting as referees and awarding the winning points to the one who is most successful in accusing his opponent of unfair trial tactics and, even prevarication. We have no doubt that the real issues here were, at least, beclouded by the frequent altercations between counsel, and that these improprieties, when considered cumulatively with other errors referred to hereafter, require a new trial on the question of liability as well as that of damages.
*166 It is not necessary to discuss the defendant's assignments of error relating to the trial judge's refusal to grant defendant's requested instructions, since, under the ruling herein made on the statute of limitations question, there will be no predicate, upon the re-trial, for the theory upon which these requested instructions was based.
The assignment of error as to the admissibility of certain evidence relates to the answers to interrogatories propounded to the defendant's employee Bailey in another suit, Seaboard Air Line Railroad Company v. Holt, involving a similar claim for contact dermatitis. The interrogatories elicited information from Bailey as to how many employees in defendant's entire railroad system claimed to have occupational dermatitis during each of the years 1947 through 1953. The answers named 87 employees in 19 cities or towns in Georgia, North Carolina, Virginia and the District of Columbia, as well as Florida, who claimed to have an occupational dermatitis during one or the other of the years in question. In the instant suit, the answers were read to Bailey by plaintiff's counsel in the presence of the jury, purportedly to "refresh his recollection"; and while the record is not clear as to whether the "affidavit" containing the questions and answers was actually admitted into evidence, the information contained therein was before the jury and, for all practical purposes, was evidence considered by it. The plaintiff argues that this evidence was admissible as an "express communication" to defendant to prove that defendant "was on notice that there might be something unsafe in its shops." Evidence of an express communication to prove that a person charged with negligence had notice of the dangerous condition of a machine or place is generally held to be admissible, as against an attack on the ground that it is hearsay or opinion evidence, 38 Am.Jur., Negligence, Sec. 324, p. 1020; Wigmore on Evidence (3rd Ed.) Sec. 252; Smedra v. Stanek, 10 Cir., 1951, 187 F.2d 892; People v. Lang Transp. Corp., 43 Cal. App.2d 134, 110 P.2d 464; Jenkins v. Reichert, 125 Conn. 258, 5 A.2d 6; Dowling v. L.H. Shattuck, Inc., 1941, 91 N.H. 234, 17 A.2d 529. But one of the elementary rules of evidence is that "matters offered in evidence must be relevant to the issues of the case and tend to establish or disprove them; * * *." 38 Am.Jur., Negligence, Sec. 312. "Particularly if the character of evidence challenged as irrelevant is such as to arouse the sympathy of the jurors, or calculated to create prejudice, the reception of such evidence should be accorded careful consideration." Jones, Commentary on Evidence (2d Ed.) Sec. 588, p. 1087.
Here, the answers to the interrogatories did not show whether any of the 87 employees in the widely separated areas who claimed to have an occupational dermatitis, actually had it; nor whether it was, in fact, caused by something in their work; nor whether they were employed in the same type of work as the plaintiff and under the same conditions. In these circumstances, the evidence in question could only remotely, if at all, tend to prove that the defendant had notice of the unsafe condition of its Hialeah shop here relied upon by plaintiff as showing negligence  that is, the defendant's use, as a rust inhibitor, of the chromate compound "Nalco." "The rule in regard to the relevancy of evidence is fundamental, and is well defined. It excludes, says Prof. Greenleaf, `all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute; and the reason is that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice, and mislead them; * * *'" Wise v. Ackerman, 76 Md. 375, 25 A. 424, 426. "Evidence may be relevant, and yet its relevancy may be so slight and inconsequential that to receive it would be to distract that attention which should be concentrated on vital points, and to confuse rather than to illuminate the case." Jones' *167 Commentary on Evidence (2d Ed.) Sec. 588.
We have considerable doubt that the evidence in question could be considered relevant, within the above rule; cf. Plough v. Baltimore & O.R. Co., 2 Cir., 1947, 164 F.2d 254; New York Life Ins. Co. v. Seighman, 6 Cir., 1944, 140 F.2d 930. But even if it was remotely relevant, it was still merely cumulative, as there was other evidence amply sufficient to prove the defendant's knowledge of the dangerous propensities of Nalco. The tendency of the evidence in question to prejudice the jury against the defendant far outweighs any remote evidentiary value; and, since it was merely cumulative, we think the trial judge abused his discretion in admitting it into evidence. The error was not harmless, when considered in connection with the other errors referred to herein.
It is also contended on behalf of the defendant that the trial judge erred in permitting the plaintiff to call certain employees of the defendant as his witnesses under 30 F.S.A. Rule 1.37(a) of the Florida Rules of Civil Procedure (old Common Law Rule 37), which authorizes a party to call "an adverse party or an officer, director, or managing agent of a public or private corporation * * * which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party * * *." The witnesses in question were Walter E. Richey, foreman of the defendant's Hialeah diesel shop; J.C. Bailey, claim agent for the defendant's southern Florida territory; and R.W. Rogers, general purchasing agent for the defendant. Defendant conceded at the trial that Rogers was an "officer" of the defendant and is in no position to complain here that it was improper to call him under Rule 1.37, supra. Neither Bailey nor Richey was an officer or director, and the only question here is whether they were "managing agents" within the meaning of the rule. We have concluded that they were not.
We have found only a few cases defining a "managing agent" within the meaning of a rule similar to our Rule 1.37(a), supra, or Rule 43(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., from which our rule was derived. In Dowell, Inc., v. Jowers, 5 Cir., 1950, 182 F.2d 576, an engineer in charge of the corporation's acidizing crew was held not to be a "managing agent" under Rule 43(b). In Moran v. Pittsburg-Des Moines Steel Co., 3 Cir., 1950, 183 F.2d 467, it was held that a partnership employee was a "managing agent" of the partnership under Rule 43(b), where it had been the uniform practice for the employee to sign letters written on partnership letterhead as manager of the partnership's engineering and purchasing departments and such practice was known to and unobjected to by the partners. Clearly, a bus driver is not a "managing agent" under such a rule, Abney v. City and County of San Francisco, 1953, 115 Cal. App.2d 506, 252 P.2d 654; nor is a streetcar motorman, Moore v. St. Paul City Ry. Co., 1917, 136 Minn. 315, 162 N.W. 296; and, just as clearly, the manager of the branch office of a corporation is a "managing agent", Huether v. McCaull-Dinsmore Co., 1925, 52 N.D. 721, 204 N.W. 614. Under a statute or rule providing for taking the pre-trial deposition of the "`managing agents or employees'" of a corporation, firemen employed by a railroad company are not within the rule, Friedman v. New York Cent. R. Co., 206 App.Div. 169, 200 N.Y.S. 337, 338; nor is a railroad company's yardmaster a "managing agent" under such a statute, Barnet v. New York Cent. & H.R.R. Co., 106 Miss. 198, 175 N.Y.S. 491, 493. See also Varley v. Wayne Oil Tank & Pump Co., Sup. 1916, 158 N.Y.S. 155, holding that an employee in charge of a branch sales office, but with no discretion or authority to accept orders, is not a managing agent within the meaning of such a statute.
There are, however, a great many cases that were concerned with the question of a "managing agent" within the meaning of statutes providing for the service of process *168 upon the managing agent of a corporation. A majority of these decisions appear to have been based on the general principles set forth in Federal Betterment Co. v. Reeves, 73 Kan. 107, 84 P. 560, 562, 4 L.R.A.,N.S., 460, as follows:
"While no general rule can be stated which will serve as a test, certain principles may be announced which will serve to assist in determining the matter. Such managing agent must be in charge, and have the management, of some department of the corporation's business, the management of which requires of the agent the exercise of an independent judgment and discretion; not that he shall not be under the general direction of the corporation  all agents are subject to the general control of their principals  but in the management of his particular department he must have authority to manage and conduct it as his discretion and judgment direct. He must be in the exclusive and immediate control and management of that department or of the entire works conducted at the place where he is in charge."
Our rule does not define "managing agent". But, according to Webster's New International Dictionary, "to manage" means "to control and direct; to handle successfully or cope with; to conduct; guide; administer." And under the rule of construction known as "ejusdem generis", it would seem that the words "managing agent" should be construed as applicable only to persons of the same general nature or class as those enumerated, to wit, officers and directors. While we do not agree with defendant's contention that a "managing agent" must be in charge of the corporation's business as a whole, we have the view that the rule of Federal Betterment Co. v. Reeves, supra, is applicable to the determination of who is a "managing agent" within the meaning of Rule 1.37(a), and that he must, at least, "be in the exclusive and immediate control and management of [a] department or of the entire works conducted at the place where he is in charge." Thus, a "managing agent" must be more than a shop foreman, such as the witness Richey, cf. Simmons v. Defiance Box Co., 1908, 148 N.C. 344, 62 S.E. 435; nor do we think the witness Bailey can be considered a "managing agent" within the meaning of the rule. Bailey is (or was at the time of trial) the defendant's claim agent for southern Florida. But he had no authority to pass on claims. This was done by the Senior General Attorney in Norfolk, Virginia, and Bailey merely investigated the claims and followed the directions of the Senior General Attorney in handling them. He had no right to exercise that independent judgment and control which is inherent in the right "to manage" a department.
It was, then, error to allow the plaintiff to call the witnesses Richey and Bailey under Rule 1.37(a); and while this mistake, by itself, was not so prejudicial as to require a new trial, it was but another factor that added to the essentially unfair nature of the former trial and which, when considered cumulatively, requires a new trial.
For the reasons stated, the judgment appealed from is reversed and the cause remanded for a new trial on the question of liability, as well as damages.
Reversed and remanded for a new trial.
DREW, C.J., and TERRELL, ROBERTS and BARNS, JJ., concur.
BARNS, Justice (concurring).
Fortunate, indeed, is an appellant who has any success on appeal when he has failed to plead his assignment of errors according to the facts and circumstances as they occurred or has failed to address his brief to an identified judicial act relied on for reversal. See Redditt v. State, Fla., 84 So.2d 317.