The first question presented by the record in this case is whether demurrers to the declaration were properly overruled. The suit is against the Washington, Baltimore and Annapolis Electric Railroad Company and the County Commissioners of Prince George's County, and the declaration alleges that they were under legal obligation to keep in repair for public travel "the highway bridge over the railroad" of the first named defendant "in Prince George's County, Maryland, known as the Bowie Road," but that the "bridge was maintained in a negligent manner, to wit, a board out of the floor and an obstruction placed across the same in such a way that while the plaintiff was driving across the said bridge with her horse and buggy, the horse, while on said bridge and near the said obstruction and open floor, became frightened and ran away and threw the plaintiff out and seriously injured and bruised her, broke up the buggy and injured the horse, all of which damages and injuries occurred without fault upon the part of the plaintiff."
While demurrers to the declaration were separately filed by both defendants, no reference is made to the demurrer of the Washington, Baltimore and Annapolis Electric Railroad Company in the brief filed in support of its appeal. On behalf of the County Commissioners of Prince George's County the declaration is said to be demurrable for not distinctly alleging that the place of the accident was on a public *Page 505 
highway subject to the control of the County Commissioners, for not sufficiently describing the negligence to which the injuries sued for are attributed, for not specifying the cause of the horse's fright, for omitting to charge the County Commissioners with notice of the conditions referred to, and for not stating the time when the accident occurred. It does not seem to us that any of these objections can properly be sustained. The place of the accident is described as being on a "highway bridge" which the defendants were legally obliged "to keep in repair for public travel." The negligence is alleged to have consisted in the fact that a board was allowed to be "out of the floor," and an "obstruction placed" on it, "in such a way" that the horse which the plaintiff was driving became frightened. There is thus indicated a causal connection between the conditions complained of and the fright of the horse. It was not necessary for the declaration to expressly aver notice to the defendants of the existence of the hole in the floor of the bridge and of the obstruction thereon, or to state the time of the accident. Such allegations are not included among those recognized by statute as sufficient for the purposes of a suit of this nature. (Code, art. 75, sec. 24, sub-sec. 37.) The charge of negligence implied a failure to repair the bridge and remove the obstruction after actual or imputable notice of the need for such action. The time of the occurrence was not an essential element of the case. Section 5 of article 75 of the Code provides: "It shall not be necessary to state time or place in any declaration or plea, except in cases where time or place forms a part of the cause of action or ground of defense."
In the form of declaration approved by the Code provision first cited, the allegations are simply: "That the defendant is an incorporated city, and is bound to keep its streets in repair; that one of its streets, called street, was negligently suffered by the defendant to be out of repair, whereby the plaintiff in traveling on said street and using due care was hurt." This was provided as a model of simplified *Page 506 
pleading, and was declared to be sufficient, for analogous cases, with such modifications as the particular facts might require. (Code, art. 75, sec. 24.) The declaration before us fully gratifies the statute and definitely informs the defendants as to the occasion for the suit and the grounds of the liability with which they are charged. Phelps v. Howard County, 117 Md. 175;Cecil Paper Co. v. Nesbitt, 117 Md. 59; Lapp v. Stanton,116 Md. 197; Harre de Grace v. Fletcher, 112 Md. 562; Amer.Express Co. v. State, use of Denowitch, 132 Md. 72.
In addition to pleading the general issue, the County Commissioners of Prince George's County filed a special plea to the effect that, since December 3rd, 1901, they have not been under any legal obligation to maintain and repair the bridge mentioned in the declaration, by reason of an order of that date, passed by the Board of County Commissioners, authorizing the Washington, Baltimore and Annapolis Electric Railroad Company "to construct and operate its railroad over and across all public roads in Prince George's County * * * as shown on accompanying map, provided, the said company shall construct and maintain crossings for said public roads at all points where said railroad crosses said roads and shall construct and maintain proper grades at all crossings." A demurrer to the special plea was sustained. This ruling was clearly correct. The order pleaded could not relieve the County Commissioners of the duty and responsibility imposed upon them by the law in reference to the maintenance of the public highways of the county. Whatever rights and liabilities may exists as between the Commissioners and the railroad company with respect to the repair and supervision of the bridge, the direct legal obligation of the county to the public to keep its highways safe for travel is not affected by such considerations. Eyler v. Allegany Co., 49 Md. 257;Chesapeake Ohio Canal Co. v. Allegany Co., 57 Md. 201;Balto. Ohio R.R. Co. v. Howard County, 111 Md. 176. *Page 507 
In Eyler v. Allegany County, just cited, where the county was sued by a person injured because of the defective condition of a bridge, erected by the Chesapeake and Ohio Canal Company to provide a crossing for a public road which the excavation of the canal had severed, it was said by this Court that "where a new way or road is made across another already in existence and use the crossing must not only be made with as little injury as possible to the old road, but whatever structures are necessary for such crossing must be erected and maintained at the expense of the party under whose authority and direction they are made. This, upon review of the authorities, was recently decided by this Court in the case of the Northern Central Railway Co. v. Baltimore, 46 Md. 425, to be a principle or rule of the common law. It is therefore certain that the duty of maintaining and keeping this bridge in repair is devolved upon the canal company. But does this fact relieve the County Commissioners from responsibility to a private individual, who, as one of the public, is entitled to travel the highway and cross the bridge, for injuries he may sustain, by reason of its being out of repair through the default or neglect of the canal company?" In answering this question the Court referred to the statutory duties and liability of County Commissioners in regard to county roads and bridges, and then proceeded to state its conclusion that the bridge on which the accident happened "was a countybridge under the charge and control of the County Commissioners, and one which in discharge of their duty to the public they were bound to keep in repair, if the canal company neglected its duty in that respect."
The trial of this case resulted in a verdict and judgment for the plaintiff, and both defendants have appealed. There is only one bill of exceptions in the record. It refers to rulings on the prayers, of which five were offered by the plaintiff, three by the County Commissioners and eleven by the railroad company. Our conclusions as to the questions raised in *Page 508 
regard to the prayers will be stated after a brief reference to the evidence.
The only testimony as to the circumstances of the accident is furnished by the plaintiff's narrative. She testified that on a Monday afternoon in October, 1919, she was driving a horse and buggy on the Bowie road, a public highway, which crosses the Washington, Baltimore and Annapolis Electric Railroad by an overhead bridge, and that as she was passing over the bridge a cross-tie lying on the floor caused the horse to shy, but she quieted and controlled him until he was nearly beyond the cross-tie, when he looked down through a hole in the floor, which the cross-tie partly covered, and saw the wire and rails below, and then shied again, reared, plunged forward and ran away, upsetting the buggy and throwing the plaintiff to the ground. One of the witnesses for the plaintiff testified to having seen the hole in the bridge floor on the Friday before the Monday of the accident. The hole was about two feet long, he said, and about ten inches wide. It was uncovered at that time, but on the afternoon of the next day he crossed the bridge again and noticed that the hole was partly covered by a cross-tie. Another witness stated that he saw the hole in the bridge on the morning of the day before the accident, and there was then a cross-tie over it, which did not cover it completely. There was proof that the cross-tie had been placed over the hole by one of the railroad company's employees, and that its bridge foreman subsequently had the break repaired with a new board. While the record does not show specifically when and by whom the bridge was constructed, the proof is undisputed that the railroad company had assumed the duty of keeping it in repair.
It appears from the evidence that the Bowie road was in existence and use before the railroad was constructed, and that its location was changed so that the present overhead crossing might be provided. It is inferable from all the facts that the bridge was built by the railroad company in pursuance of the order of the County Commissioners, already *Page 509 
noted, authorizing the company to locate and operate its railroad over public roads in the county upon condition that it should construct and maintain proper crossings.
By the first prayer of the County Commissioners, which was rejected, it was sought to have the case withdrawn from the jury, as to them, on the theory that there was no legally sufficient evidence of any negligence on their part which resulted in the plaintiff's injuries. A verdict against the County Commissioners must depend upon a legitimate inference of negligence in regard to their own obligation, independent of that of the railroad company, to have the bridge kept in a safe condition for public travel. In order to support a recovery against them, the evidence must have a legal tendency to prove facts from which it may be concluded that, in the exercise of due diligence, they should have learned of the defect in the bridge, and have caused it to be repaired by the railroad company, or by their own employees, before the accident occurred. There is no proof in the record that the County Commissioners or any of their agents had actual knowledge prior to the accident that there was a hole in the floor of the bridge. The question is whether they are properly chargeable with constructive notice of that fact. In view of the evidence as to the size of the hole and its conspicuous and dangerous place in the floor of a bridge forming part of a much traveled highway, and as to the period of time during which it had existed before the plaintiff was injured, we see no reason to exclude the case from the application of the rule that questions of negligence, predicated on constructive notice, in actions like the present, should ordinarily be submitted to the jury. 13R.C.L. 519-20; 29 C.J. 719-20; Elliott, Roads and Streets
(3rd ed.), vol. 2, sec. 812; Magaha v. Hagerstown, 95 Md. 75;Harford County v. Hause, 106 Md. 439. The rejection of the first prayer of the County Commissioners is, therefore, approved.
The second prayer on their behalf would have directed a verdict to be rendered for them if the jury should find that *Page 510 
the defect in the bridge was "unknown" to them "at the time of the accident." Such an instruction, requiring actual knowledge of the defect, would have been plainly erroneous and was properly refused.
The third prayer of the County Commissioners would have made a verdict against them depend upon a conclusion that the accident was due to their failure to exercise reasonable care in regard to having the bridge kept in a safe condition. It would be only upon the ground of such negligence that the suit as against the County Commissioners could be maintained. The rejection of their third prayer disregarded the essential basis of their liability, as to which they were entitled to have the jury definitely instructed. There was error in the rejection of this prayer.
It was the purpose of the railroad company's first prayer to have the jury instructed that there was no legally sufficient evidence of any negligence on its part with respect to the condition of the bridge, and that a verdict in its favor should therefore be rendered. This prayer could not properly have been granted in view of the evidence, which admitted of the inference that the defect in the bridge was known to the railroad company's bridge foreman, or was discoverable by him, in the exercise of due diligence, in what the jury might reasonably have regarded as sufficient time for its repair before the plaintiff was injured. The second and fourth prayers of the railroad company present the theory that it was not proved to be under any obligation to keep the bridge in repair. Such an instruction would have been incorrect in view of the fact and inferable cause of the company's regular and exclusive assumption of that duty. The third prayer of this defendant asked to have the case withdrawn from the jury on the ground of contributory negligence, but the exception to the refusal of this prayer was not urged, and we think it was rightfully rejected. The eleventh prayer sought an instruction that there was no legally sufficient evidence of any permanent injury to the plaintiff as a result *Page 511 
of the accident. No medical evidence was introduced, the physician who attended the plaintiff not being in court, but there was testimony that, at the time of the trial, two years and a half after the accident, the plaintiff had not yet recovered from its effects. It was proved that the principal injuries were to her right arm and foot, and that she had never regained their normal use. The description in the evidence of the nature and consequences of the plaintiff's injuries warranted an inference as to their permanence which the prayer failed to take into consideration. It could not, therefore, have been granted as a proper limitation of the plaintiff's permissible recovery.
The fifth, sixth, seventh and tenth prayers of the railroad Company were granted. No point is made as to the rejection of its eighth prayer, the purpose of which appears to have been given effect by one of the instructions granted at its instance. Its ninth, and only remaining, prayer was withdrawn.
By the plaintiff's first prayer, which was granted, the jury were authorized to return a verdict against the County Commissioners if the failure to repair the bridge, in time to obviate the accident, was the result of their negligence or that of the railroad company. This was equivalent to an instruction that it was not necessary to find any negligence on the part of the County Commissioners in order to justify a verdict against them, but that they could be held responsible for the accident if the railroad company was neglectful of its duty to keep the bridge in repair. It is conceivable that the time and opportunity for notice of the defect, and for action to have it repaired, might have been found sufficient as to the railroad company, which had assumed that duty, and that as to the County Commissioners a different conclusion upon that question might have been reached. The granting of the plaintiff's first prayer left the jury no option but to render a verdict against both defendants if the railroad company *Page 512 
alone were found to have been negligent. There was error in this instruction.
The plaintiff's second prayer permitted a verdict against the County Commissioners if the jury should find, in connection with other facts, that the "hole was in said bridge before the alleged injury occurred a length of time sufficient to have fixed it," even though the Commissioners may not have had actual notice of its existence. This prayer should have been refused. The material inquiry was not whether the bridge could have been repaired during the period referred to, but whether the time was sufficient for the County Commissioners to learn of the defect and have it remedied in the exercise of due diligence.
The third and fourth prayers of the plaintiff were rejected. Special exceptions to her fifth, and final, prayer were filed because, in reference to the measure of damages, it invited the jury to consider whether her "injury is in its nature permanent," and permitted an allowance for the injury to her horse, buggy and harness, although the evidence is said to be legally insufficient to show that the plaintiff was permanently injured in the accident, or that she owned the horse, buggy and harness which she was then using. The question as to the legal sufficiency of the evidence of permanent injury has already been determined. It was testified by the plaintiff that she owned a horse and two buggies, but it appears that the horse she was driving at the time of the accident belonged to her father, with whom she was living. The proof is consistent with a conclusion that she was the owner of the buggy and harness. It was testified that the harness was torn in places and that the shafts of the buggy were broken. The only injury to the horse was a cut on the leg, which was probably not serious, as it was not so described in the testimony. This could not reasonably be supposed to have had any material effect upon the award of damages. It certainly would not afford an adequate ground for remanding the case and subjecting the parties to the trouble and expense of a retrial. *Page 513 
But by reason of the errors in the rejection of the third prayer of the County Commissioners, and in the granting of the plaintiff's first and second prayers, referring to those defendants, the judgment must be reversed and a new trial awarded as to them, subject to the rule that the plaintiff can have only one satisfaction of her claim of damages. Berkley v. Wilson,87 Md. 219.
Judgment affirmed as to the Washington, Baltimore andAnnapolis Electric Railroad Company, and reversed, with the awardof a new trial, as to the County Commissioners of Prince George'sCounty, the costs to be paid equally by the railroad company andthe appellee. *Page 514