KANNER, Acting Chief Judge.
As the result of a negligence action brought by Marie Grant and Stanley Grant, her husband, jury verdicts were rendered in the respective amounts of $1,700 for the wife and $1,300 for the husband. Marie Grant sought damages for personal injuries both' temporary and permanent and for future diminution of her earning capacity, while the husband’s claim was for medical and other expenses connected with treatment of the wife’s injuries and for deprivation of her society and services.
Through the appeal brought by both the husband and wife consequent upon the judgment entered on the verdicts, the primary question which has emerged for this court’s consideration is whether the trial judge erred in refusing to charge the jury that they should consider a diminution of earning capacity, if any, of appellant wife.
At the time of trial in November, 1961, Marie Grant was 46 years of age, had been married over 25 years; and there was a son in college. She was a housewife, who also assisted her husband in duties connected with a nursery and garden supply business which he had begun in 1955 and to which a gift shop had been added. The accident from which this suit arose occurred on September 12, 1957, while Marie Grant was a passenger in her husband’s automobile. There was a two car collision, wherein a vehicle driven by appellee Brown and owned by appellee Hoffman struck the rear of Stanley Grant’s automobile, giving rise to the injuries which comprise the basis of this action. As a result of the impact, Mrs. Grant was hospitalized four days for treatment of a severe neck and shoulder strain. X rays taken at this time revealed no bone damage or misalignment. After her release from the hospital, she spent several more days at home in bed and, upon the advice of her physician, wore a therapeutic collar for some time. She began a series of visits extending over a period of three years to a number of doctors, seeking relief from pain and discomfort.
*288 Marie Grant complained to the doctors of recurring neck and shoulder pains, muscle tightness, headaches, loss of feeling in her extremeties, dizziness, and nausea. Their treatment, which she said provided only temporary relief, included traction, physical manipulation, ultrasound, tranquilizers, and muscle relaxants. Her husband testified that his wife’s activities connected with his business were restricted after the accident because of her injuries.
On the subject of permanency of Mrs. Grant’s injuries, the testimony of the physicians was in direct conflict. As opposed to the opinions evinced that nothing was permanently wrong with her physically, there were three other doctors, including an orthopedic surgeon, an osteopathic physician and surgeon, and a neurologist whose testimony is relied upon by appellants. Of these, there appears the following testimony of the orthopedic surgeon:
“O Did you have an opinion as to residual disability in this case?
“A Yes.
“Q What would that be?
“A I would say in the area of five to ten per cent.”
The estimate of the osteopathic physician is set out in the following excerpt:
“Q Now, Doctor, what is your prognosis for Mrs. Grant?
“A I would say guarded, in that— Well, I’ll read from the report: ‘Prognosis: guarded. It is felt that the likelyhood (sic) of a complete recovery is remote. An overall permanent disability of fifteen per cent is stated in view of the personality changes which the patient has undergone in the last six years.’ ”
The neurologist testified:
“Q After it persists for a certain period of time does it make any significance as to the prognosis of the spasm, or the cause?
“A Yes.
“Q What would that be, Sir?
“A Most of these clear up within a year. If it persist (sic) longer than a year one can be fairly certain that there will be some continuing difficult (sic) for a great period of time. If it has persisted for four years, I think we can feel that it is a permanent difficulty.”
None of the doctors who testified concerning the permanency of Mrs. Grant’s injuries expressed any opinion that her injuries would have any effect upon her earning power. The trial judge struck that part of appellants’ requested instruction with respect to diminished earning capacity which would have placed before the jury for consideration that element of damage. The reason given by him was that there was no medical evidence before the jury that the injuries complained of by the appellant wife would in fact reduce her earning capacity in the future. We think the trial judge should not have stricken that portion of appellants’ instruction.
Two cases to which reference may be had for comparison are Goldstein v. Walters, Fla.App.1961, 126 So.2d 759, and Florida Greyhound Lines v. Jones, Fla.1952, 60 So.2d 396. In the former, one physician testified that the plaintiff housewife’s injuries would probably result in a fifteen per cent permanent partial disability. There, one whose only occupation had been that of a housewife prior to the accidcn: and who had suffered disability to the extent indicated was deemed to be entitled to an instruction on decrease in earning capacity. In the Florida Greyhound case, the plaintiff housewife had suffered permanent disabling injuries. She had previously assisted her husband by clerking in his small grocery store, although there was no testimony as to the value of those services. Again the instruction on reduced earning capability was held to have been proper.
*289 Insofar as the appellant husband is concerned, we find no basis for reversal of the judgment as to him. However, as we have indicated, because of failure of the trial court to have included the diminution of ■earnings phase of the instruction, the judgment rendered as to Marie Grant is reversed for new trial solely upon the issue ■of damages. It is shown that the driver of the other automobile involved in the collision admitted through plea of guilty that he had violated a traffic law, and no testimony was offered by the appellees the defendants below, on the subject of liability.
Affirmed in part and reversed in part.
SMITH and WHITE, JJ., concur.