## RAINES *v.* BOLTES

[No. 385, September Term, 1969.]

*Decided June 3, 1970.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Leon Shampain,* with whom were *Vaughan & Shampain* on the brief, for appellant.

*Leonard A. Orman* for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

Late in the afternoon of a sunny day in March 1968 the appellee (Boltes) entered the northbound lane of U.S. Route 301 from a service station. He intended to continue north for another 200 yards or so to the intersection with Central Avenue (Route 214), turn left at the intersection and then go south on 301. Before he reached the intersection he was struck in the rear by the appellant (Raines). Boltes' suit for damages was tried in the Circuit Court for Prince George's County before Meloy, J., and a jury, on 10 September 1969. Judgment on the jury's verdict of $5,000 was entered on 19 September and from

that judgment and the rejection of his motion for judgment N.O.V. Raines has appealed. His principal complaint is that Judge Meloy refused to instruct the jury that there was "no evidence of permanent injury" to Boltes. In his charge Judge Meloy told the jury they might "consider * * * the permanent or temporary character" of the injuries sustained by Boltes.

Before entering the highway Boltes, alone in a 1953 Volkswagen, looked to his left and saw a car in the right lane "four hundred yards" away. The record is silent as to the presence of any other vehicle. He entered the right lane and signaled his intention to make a left turn. As he proceeded north he "looked into * * * [his] rear view mirror" and noticed that the car was "right behind * * * [him]" approaching "at a high rate of speed." He decided to pull over "into the left-hand lane." He said the car behind him [Raines] "pulled over at the same time" and an instant later struck him in the rear about "three quarters over the [broken] line" dividing the two lanes. He testified the impact spun his car around "two or three times" causing him to be "thrown forward * * * back * * * and * * * forward one more time." The Volkswagen, severely damaged, came to rest about "ninety * * * [to] one hundred feet" farther on. His estimate of Raines' speed was "about seventy." His own speed at the moment of collision was between "thirty and forty."

Other than Boltes the only witness was Officer Glenn Drake, of the Prince George's County police. Raines neither appeared at the trial nor did he assist counsel, appointed by the Unsatisfied Claim and Judgment Fund to defend him, in the preparation of his case. Officer Drake was not very helpful. He said he found the two vehicles on the north side of the intersection. He saw no "skid marks" but he did notice that the debris had been scattered by traffic. He thought the actual collision had taken place somewhere near the south side of the intersection.

## I.

Raines assigns error in that the court refused to hold, as a matter of law, that Boltes was contributorily neg-

ligent or that Raines was free of any negligence. We agree with Judge Meloy and in our appraisal of his conclusion we have been mindful of the requirement that the evidence and all logical and reasonable inferences deducible therefrom must be considered in a light most favorable to Boltes. *Ackerhalt v. Hanline Brothers,* 253 Md. 13 (1969).

Raines contends the boulevard law, Code, Art. 66½, §§ 233, 234 (1967 Repl. Vol.), is applicable here and that Judge Meloy was obliged to so instruct the jury. On the record before us we cannot agree. We think what Judge Oppenheimer said in *Grue v. Collins,* 237 Md. 150, 157 (1964), where the appellee entered the boulevard from a parking lot exit and traveled a distance of 174 feet on the highway before being struck in the rear, is apposite here. Judge Oppenheimer, for the Court, said:

> "Rigorous as are the duties imposed upon the unfavored driver in entering the public highway for the protection of the public and for the smooth flow of traffic, *he is not a perpetual pariah;* if he has observed the mandates of the law in entering the intersection and has become a part of the flow of traffic on the favored highway, he has the same rights and is subject to the same duties as the other drivers on that highway." (Emphasis added.)

Raines seems to be saying that the favored driver has an absolute right to maintain his course and speed and that one who enters the boulevard, "and becomes part of the flow of traffic" thereon, in such a manner as to force the favored driver to reduce his speed or deviate from his course, is guilty of negligence as a matter of law. We have yet to so hold, we do not do so here, and it is unlikely we ever shall. In *Ness v. Males,* 201 Md. 235, 240 (1953), we said:

> "It is not disputed that the unfavored driver had completed his turn and was proceeding north on

his proper side of the road immediately before the impact. The point of impact being at least 33 feet north of the intersection, it might be argued that the accident would have happened even if the automobile had never made a turn but had been proceeding north on Old York Road in its proper lane."

\* \* \*

"The obligation to yield the right of way could hardly demand that he remain there permanently or enter at his peril."

We also think there was enough evidence to support a finding that Raines was negligent. *Pyle v. Lee,* 250 Md. 315 (1968).

Raines insists Boltes' testimony in respect of his (Raines') speed should have been excluded but we are not persuaded that it was so impossible as to be worthless. He said he observed Raines' car for "two seconds \* \* \* in \* \* \* [his rear view] mirror." Its probative value may indeed be questionable but, in these circumstances, its admissibility must be conceded. *Mulligan v. Pruitt,* 244 Md. 338, 344 (1966), and the cases therein cited. *See Tefke v. State,* 6 Md. App. 139, 145-46 (1969).

## II.

When the testimony had been concluded and counsel had been heard on Raines' motion for directed verdict, Judge Meloy said, "The motion \* \* \* is denied. Counsel will meet with the Court in chambers to go over instructions." The record is silent in respect of what transpired in the judge's chambers but it is reasonable to suppose that Raines' counsel pressed for an instruction that there was no evidence of permanent injury. Judge Meloy's instruction in this regard is as follows:

"If you should find for the plaintiff in this case you are instructed in considering damages you may consider the health and condition of the plaintiff before the injuries complained of as

compared with his present condition by reason of those injuries and the *permanent or temporary* character thereof." (Emphasis added.)

Before the jury retired counsel were given an opportunity to except to the charge. Counsel for Raines, for the record, said, "The defendant excepts to the court's disinclination to give the following instruction to the jury. 'You are hereby instructed that there is no evidence of permanent injury in this case and are not to consider the same.' "

Boltes insists the propriety of the instruction is not before us because the objection thereto was not made in accordance with the provisions of Maryland Rule 554. We think the adequacy of the objection and the manner of presenting it satisfy the requirements of the rule and that further discussion is unnecessary.

Evidence of permanency, if any there is, must be found in the testimony of Boltes and the excerpts from a hospital record which was read into evidence. No expert medical testimony was offered. In our consideration of this evidence we have assumed its truth and we have resolved all conflicts in favor of Boltes. We have considered also such inferences logically and reasonably deducible therefrom in a light most favorable to him. *Baltimore Transit Co. v. Smith,* 252 Md. 430, 439 (1969).

Boltes testified that as a result of the collision he suffered injuries to his left wrist and back. He said he was treated that day (30 March 1968) at the Andrews Air Force Base hospital. He was informed by the treating physician "to expect a lot of back discomfort * * * [because he] probably pulled a few ligaments and tore a few muscles." Although the injury to his wrist eventually healed during the 18 month interval between the accident and the trial, his back, he said, "is still having problems." He explained that since the day of the accident "[l]ifting and sleeping, remaining in positions for long periods of time will start a backache." He works as an orderly "in the surgical ward" at the Base hospital and

he cannot presently "lift patients out of bed" without suffering "muscle spasms" one to "three time a week" which "last maybe thirty * * * [to] fifty seconds." Boltes indicated that he has returned for treatment at the hospital "about fourteen" times and that his injury necessitated the purchase of "a bedboard." He was treated, he said, by an orthopedic specialist who gave him "various medications * * * [and] started [him] * * * on exercises * * * to rebuild the muscles in * * * [his] back." Boltes also stated that he was placed, on one occasion, "on a 30-day physical profile change" which "limited the work that * * * [he] could do." The spasms, however, recurred when he resumed his regular hospital duties.

The hospital records read into evidence reveal that Boltes, in the course of 14 hospital visits, has complained of back pain. His condition was diagnosed, by whom is not shown, as a "paraspinous sprain" on one occasion, and "tight hamstrings" on another. Various drugs, exercises, a bedboard, and the 30-day profile were prescribed. The records gave no indication in respect of the probability of recovery.

A plaintiff who attempts to establish future impairment from an injury which is essentially subjective in nature, such as the one in the case at bar, without expert medical testimony, bears a heavy burden. In *Cluster v. Upton,* 165 Md. 566 (1933), Chief Judge Bond, for the Court, commenting upon the sufficiency of similar evidence, said:

> "Prediction from present conditions of the conditions which will exist in the future may in some instances be made by a jury without the aid of opinions of experts in such matters. Common knowledge would tell them that a lost member is permanently lost * * * and there may be conditions which, while less obviously permanent in their nature, may still, according to common knowledge, be probably so, with such a degree of probability that an adjudication of

> permanency as a fact may be permissible without expert opinions. * * * *There must, however, be a reliable basis for the adjudication of it as a fact, something beyond mere conjecture, or possibility, and the burden is upon the plaintiff to establish the fact by evidence sufficient to support the finding, if he intends to include permanent injury as an item in the ground of his recovery."* Id. at 569 (emphasis added).

The plaintiff in *Cluster* asserted that he had not regained full use of his right hand, fractured in an automobile accident 11 months earlier, and that the jury could, therefore, properly consider the permanency of his injury. We indicated, however, that this evidence standing alone would not raise a jury question in respect of permanency, but we held that the question was properly submitted to the jury because the plaintiff's crooked finger raised an inference of future impairment.

In *Mangione v. Snead,* 173 Md. 33 (1933), the mother of the infant plaintiff testified that the mental condition of her child, after he was struck by the defendant's car, was abnormal and that from that time on his activities were affected. Our predecessors held that "[the plaintiff's] condition itself is not of such a character as to permit an inference that it is not likely to change * * *." *Id.* at 50. Judge Offutt, for the Court, quoted *Cluster, supra,* with approval, further noting that:

> "[B]efore it can be said that the effect of an injury is permanent, it must appear that it is caused by some condition caused by the injury which is not likely to change, but such an inference cannot be drawn from the condition itself, when it is accompanied by no physical impairment or defect, is subjective, and offers no intrinsic *indicia* of its probable duration." *Id.* at 51.

Judge Offutt's remarks were quoted with approval in *Baer*

*Bros., Inc. v. Keller,* 208 Md. 556, 563 (1956), and noted in *Straughan v. Tsouvalos,* 246 Md. 242, 257 (1967). *See also Wilhelm v. State Traffic Commission,* 230 Md. 91, 99, 100-01 (1962) ; and *Jewel Tea Co., Inc. v. Blamble,* 227 Md. 1, 6-7 (1961).

The defendant, in *Washington, B. & A. Elec. R.R. v. Cross,* 142 Md. 500 (1923), a case relied upon by the appellee, sought an instruction that there was no legally sufficient evidence of any permanent injury to the plaintiff. No medical evidence was introduced but the plaintiff did testify at the trial, *two and one-half years after the accident,* that she had never regained normal use of her injured arm and foot. We held that the requested instruction was properly denied because "[t]he description in the evidence of the nature and consequences of the plaintiff's injuries warranted an inference as to their permanence." *Id.* at 511. Although *Cross,* at first glance, seems to support the appellee's position here, we think its persuasive force has been impaired by the later decisions in *Cluster, supra,* and *Mangione, supra;* and it is distinguishable from the case at bar. We think it is clear that upon the facts before us permanency cannot be inferred, unless by speculation.

*Von Schlegell, Inc. v. Ford,* 167 Md. 584 (1934), cited by Boltes, provides little support. In that case both the plaintiff and two physicians testified that the plaintiff would never be able to regain full use of her injured arm and hand. Additionally, the plaintiff exhibited at the trial, fourteen months after the accident, two "crooked" fingers. We held that the evidence was enough to sustain an inference of permanent injury. Boltes' injury, unsupported as it is by any expert medical opinion, can hardly be said to be one from which an inference of permanency would naturally arise.

Since we shall remand the case for a new trial on the issue of damages only, it is unnecessary to consider Raines' claim that the award below was excessive. It will be observed, however, that ordinarily excessive damages

334

is not a matter for review by this Court. *Schofield v. Uebel*, 254 Md. 402 (1969) ; *Abraham v. Moler*, 253 Md. 215 (1969).

> *Judgment reversed.*
> *Case remanded for a new trial*
>   *on the issue of damages only.*
> *Costs to be paid by appellant.*