368 So.2d 614 (1979)
Timothy Windell SULLIVAN, Mansur K. Stevens and United Services Automobile Association, Appellants,
v.
Lonnie PRICE, Appellee.
No. JJ-170.
District Court of Appeal of Florida, First District.
March 9, 1979.
Rehearing Denied April 2, 1979.
*615 Robert P. Gaines, of Beggs & Lane, Pensacola, for appellants.
Walter H. Beckham, Jr. and Joel D. Eaton, of Podhurst, Orseck & Parks, Miami, and Robert G. Kerrigan, of Kerrigan, Estess & Rankin, Pensacola, for appellee.
ERVIN, Judge.
Sullivan, Stevens and Stevens' insurer, United Services Automobile Association, appeal the trial court's denial of their motion for a judgment notwithstanding the jury's verdict or a new trial.
Price, an off-duty police officer at the time of the accident, sued the appellants after he was injured on his motorcycle while chasing Stevens' car, driven by Sullivan. Price, while in his garage polishing his motorcycle, observed Sullivan in Stevens' car and another individual in a separate car driving up and down the road at high speeds. He radioed for a "marked unit", but the Department could not immediately respond. Subsequently, Price heard someone shout, "Help, I've been hit with a tire tool," and "Call the police," after which, thinking a felony was in progress, he notified the Department he intended to investigate the activity. As he approached on motorcycle, Sullivan, in Stevens' car, "spun off", and Price followed. Price's testimony that the chase reached speeds of 95-100 mph was contradicted by Sullivan who stated he went no faster than 65 mph. The speed limit was 35 mph. After about two miles, Sullivan slowed suddenly at a curve. Price was unable to stop in time and, since a car was approaching in the other lane, he drove from the road into a wooded area where he was thrown from his bike. Sullivan testified he did not know Price was behind him and that he had turned off the road earlier than the location where Price stated the accident occurred.
Price broke his clavicle in three or four places. He spent a week in the hospital, and his medical bills totaled $1,100.05. He wore a surgically inserted pin for approximately two months which he testified was painful. His injuries precluded him from working at all for three months, and for three additional months he was only on limited duty. He was incapacitated at least two days a week the following year, and, in August, 1977, he was terminated as a motorcycle policeman because of his inability, caused by the injury, to perform fully. His new job with the force resulted in a loss in both status and pay. His hobbies have been curtailed by the injury.
Appellants first argue that the evidence was not sufficient to justify production of mortality tables or instructions to the jury on permanence of the appellee's injuries since appellee presented no expert medical testimony. Cases in Florida involving the propriety of instructions on permanence of injuries or future pain and suffering in the absence of such evidence are unclear, and a solution to the problem depends upon a careful examination of the facts in each pertinent case.
Two cases from the Third District Court of Appeal have affirmatively stated that expert medical testimony is not a prerequisite to an instruction on permanent injury. Gallub v. Del Vecchio, 301 So.2d 785 (Fla. 3rd DCA 1974); Salvador v. Munoz, 193 So.2d 442 (Fla. 3rd DCA 1966). In Salvador, *616 no facts were given other than reciting plaintiff's testimony of "continuing pain and inability to work ..." which justified the charge even without expert medical evidence. Id. In Gallub, the plaintiff had been injured by the defendant, a policeman, when the defendant's revolver went off and shot plaintiff in both legs. The plaintiff appealed a $12,000 award, urging that the trial court erred in not issuing bench warrants for two of the plaintiff's medical experts who failed to appear. The plaintiff's medical expert who did testify stated the plaintiff had no permanent disability, although shell fragments remained in one of his legs. Following plaintiff's own testimony that he was permanently injured, the defendant's medical expert was called as an impeaching witness. The plaintiff's later attempt to call the defendant's doctor as his own witness to establish that the doctor had once stated plaintiff was 10% permanently disabled was denied. None of the trial court's actions was error, the Third District concluded, since the jury was instructed on the possible permanency of the plaintiff's injuries, and since "[t]he plaintiff's own testimony respecting his permanent injury was sufficient to justify a charge ... upon that issue." Id. at 786-787.
Neither Gallub nor Salvador cited Saucer v. City of West Palm Beach, 155 Fla. 659, 21 So.2d 452 (Fla. 1945), where the court held, without reciting facts of the case: "If the doctors who treated appellant do not say there is any permanent injury, the jury composed of laymen could certainly not be expected to say there was such injuries... ." 21 So.2d at 455. The court offered no comment upon the propriety of the jury considering lay testimony from which permanent injury could be inferred. Similarly, in Seaboard Air Line Railroad Company v. Ford, 92 So.2d 160 (Fla. 1955), the court held error occurred by the admission of mortality tables since there was no evidence showing permanent impairment. The facts showed that plaintiff's dermatitis, caused by a chemical solution given him by the defendant, had completely cleared at the time of trial. The plaintiff's experts had testified that he still was sensitive to the chemical compound in the solution and that he suffered from nervousness brought on by the dermatitis. However, "no witness would venture an opinion as to how long either the sensitivity or the nervousness would last; no witness said that there was even a possibility that these injuries were permanent." Id. at 163. Under such circumstances, the jury should not have been charged concerning the permanency of the plaintiff's injury. In Morrison v. Bohne, 274 So.2d 896 (Fla. 2d DCA 1973), the plaintiff's evidence was that she felt pain in her neck and left shoulder immediately after the accident; at the hospital she was treated and x-rayed; her arm was placed in a sling. She was still in pain following six weeks of physical therapy and seven months after wearing a neck collar. She was treated by an orthopedic surgeon and, at the time of trial, was still under her doctor's care. She could do desk work at her job, but was unable to bowl or do housework as before. She offered no expert medical testimony and appealed the trial judge's order granting a new trial because he had erroneously instructed the jury concerning mortality tables. Affirming, the Second District simply said that there was no evidence that the injury was permanent.
Thus, even though Gallub, supra, and Salvador, supra, appear to set a standard (see also 9A Fla.Jur., Damages, § 45), Morrison, supra, Seaboard Air Line Railroad Company, supra, and Saucer, supra, do not discuss the standard. Moreover, the conclusions stated in Salvador and Gallub appear to be in hopeless conflict with that reached in Morrison. In other jurisdictions, the rule is clearer. (See generally, Annot., 115 ALR 1149 (1938).) In Bitzan v. Parisi, 14 Wash. App. 791, 545 P.2d 578 (1976), the court reviewed the test for instructions on future pain and suffering and noted that the same test governed instructions on permanence of injuries:
The general rule followed by most all courts is that if the injury is "objective" and it is plainly apparent from the very nature of the injury that it will cause *617 pain ... in the future, expert testimony is not required... . [I]f the injury is not obvious, nor the symptoms readily apparent, it is regarded as "subjective", and medical testimony is generally necessary to support a claim of future damages. Id. at 581.
Elaborating on the rule, in Parris v. Johnson, 3 Wash. App. 853, 479 P.2d 91 (1970), the court stated that "disability" was compensable when it caused a loss in work, sleep or leisure. Id. at 95. The plaintiff Parris was a truck driver who sued for personal injuries after an auto collision, the impact of which had sent his stomach and chest into the steering wheel, bending it, and had jammed his knees into the dashboard. His medical bills were less than $100, but at the time of the trial, he testified that his hip still bothered him, especially when he was in his truck. The court held instruction on the permanence of his injuries was justified. "The violent nature of the impact, the crushing type of bodily injury, and the resulting hip symptoms do not present an issue which would require medical testimony to resolve." Id.
Similarly, in Washington B. & A. Electric R. Co. v. Cross, 142 Md. 500, 121 A. 374 (1923), the trial judge correctly refused to instruct the jury that, in the absence of medical testimony, the evidence was insufficient to show permanent injuries. The court pointed out that at trial, two and half years after the accident, the plaintiff had still not fully recovered, warranting an inference that her injuries were permanent. Accord, Horowitz v. Hamburg-American Packet Co., 18 Misc. 24, 41 N.Y.S. 54 (N.Y. 1896). In Hecker v. Union Cab Company, 134 Or. 385, 293 P. 726 (Or. 1930), lay evidence justified instructions on permanent injuries where, after being struck by one of the defendant's cabs, the plaintiff was hospitalized for about six weeks, remained home six months after her discharge and eventually had to accept other employment at a lower salary because of her physical injuries.
In cases with facts similar to Morrison v. Bohne, supra, in which the plaintiff's injuries are manifested by chronic pains, the cause of which are not diagnosed, courts hold that medical testimony must support an instruction on permanent injuries. See Raines v. Boltes, 258 Md. 325, 265 A.2d 741 (1970); Shuck v. Keefe, 205 Iowa 365, 218 N.W. 31 (1928).
In this case, the testimony of Price and of his co-workers and supervisors of his continuing inability to work which caused his demotion and which left him unable to work at all for three months, while able to work in only a limited capacity for three more months, justified introduction of the mortality tables and instructions to the jury on possible permanence of Price's injuries. Clearly his disability is not merely subjective, so that expert medical testimony was unnecessary.[1]
Appellants urge also that the lower court erred in refusing to read to the jury in its instructions certain portions of § 316.126, Fla. Stat. (1977), which describes the action required of drivers and pedestrians upon the approach of an emergency vehicle and requires that emergency vehicles, enroute to an emergency, must sound an audible warning device. The evidence showed that Price did not use an audible warning device during the chase.
Section 288, Restatement (Second) of Torts, at subsections (e) and (f) (1965), states that a court will not adopt a statute as the standard of conduct of a reasonable man where the statute is intended to "protect another interest than the one invaded," or "to protect against other harm than that which has resulted ... ." Here the statute requiring a policeman to signal audibly enroute to an emergency was not meant to protect an individual like appellant, who was either speeding, or, from which it could be reasonably inferred, illegally *618 fleeing a policeman. We find no error resulted from the refusal to so instruct. Compare Reed v. City of Winter Park, 253 So.2d 475 (Fla. 4th DCA 1971).
The appellants' argument concerning the sufficiency of the evidence is without merit, as is their argument that the appellee's counsel was erroneously allowed to ask Sullivan how many times he had been convicted of a crime. See State v. Young, 283 So.2d 58, 60 (Fla. 1st DCA 1973), and Robinson v. State, 254 So.2d 379 (Fla. 3d DCA 1971).
AFFIRMED.
McCORD, C.J., and MELVIN, J., concur.
NOTES
[1] Recently we interpreted § 627.737(2)(c), Fla. Stat. (1977), precluding actions for pain and suffering following nonpermanent injury when the effects of the injury are not medically or scientifically demonstrable, as requiring the injured person show objective signs of injury. Howard v. Newman, 363 So.2d 65 (Fla. 1st DCA 1978).