386 So.2d 241 (1980)
Timothy Windell SULLIVAN et al., Petitioners,
v.
Lonnie PRICE, Respondent.
No. 56634.
Supreme Court of Florida.
July 17, 1980.
*242 Robert P. Gaines of Beggs & Lane, Pensacola, for petitioners.
Law Offices of Kerrigan, Estess & Rankin, Pensacola, and Walter H. Beckham, Jr. and Joel D. Eaton of Podhurst, Orseck & Parks, Miami, for respondent.
ALDERMAN, Justice.
We have for review the decision of the District Court of Appeal, First District, in Sullivan v. Price, 368 So.2d 614 (Fla. 1st DCA 1979), which is in apparent conflict with Morrison v. Bohne, 274 So.2d 896 (Fla. 2d DCA 1973).
Only two of the issues which petitioners, defendants, seek to raise in this personal injury case merit discussion: first, whether expert medical testimony was a necessary prerequisite to the introduction of mortality tables and the giving of a jury instruction on their use in this case, and, second, whether expert medical testimony is a necessary predicate to a jury instruction on future damages. We agree with the result reached by the district court and hold that under the particular facts of this cause there was a sufficient basis in the evidence for introduction of the mortality tables and the giving of the challenged instructions.
On October 1, 1973, while off duty, the plaintiff, Lonnie Price, a motorcycle police officer, was in his garage working on his motorcycle when he observed defendant Timothy Sullivan and another person speeding up and down the road. He radioed the sheriff's department on his motorcycle radio and requested that a "marked unit" be sent to the scene, but the department was unable to respond immediately. He then heard a cry for help and a request that the police be called. He notified the sheriff's department that he was going to investigate what he supposed to be a felony in progress. Upon approaching the location of the cry for help on his motorcycle, he witnessed Sullivan "spin off" and he followed. Price testified that during his pursuit of Sullivan's automobile, his motorcycle reached speeds of 95-100 mph. Sullivan claimed that he did not know he was being pursued and testified that after leaving the scene his top speed was 65 mph. The speed limit was 35 mph. According to Price, Sullivan abruptly slowed down on a curve, and Price, unable to stop in time, drove his motorcycle from the road into a wooded area to avoid a collision with a car approaching in the other lane.
As a result of this accident, Price broke his collarbone in three or four places. A pinning technique was used to repair the broken clavicle. This process required an incision above the clavicle and the placing of a pin in the fracture. The pin remained in the clavicle for approximately two months. Price has a permanent scar from the insertion and removal of this pin from his shoulder. This injury precluded Price from performing any work for three months and restrained him from performing any more than limited duty for three more months. For another year thereafter, *243 he was incapacitated at least two days a week. In cold, damp weather, his shoulder would become inflamed, and he would have great difficulty holding anything with his left arm. Three and one-half years after the accident, he was terminated as a motorcycle policeman because of his inability to perform fully. He was transferred to the position of process server which was a demotion of two pay grades. Further, his blacksmith activities and his hobbies of calf roping and horseback riding were substantially curtailed.
He sued Sullivan, Stevens who was the owner of the automobile driven by Sullivan, and Stevens' insurer, alleging that Sullivan's negligent operation of Stevens' automobile caused him to leave the road to avoid a collision with Sullivan, caused him to sustain permanent injury which impaired his work ability, and caused his motorcycle to be completely destroyed. During the trial, over defendants' objection that there was no medical foundation for their introduction, the mortality tables were introduced into evidence. The trial court admitted the tables because the scar on Price's shoulder, which had been exhibited to the court and the jury, was permanent. Expressly finding that there was evidence of future loss of earnings and evidence of permanence, the trial court, over defendants' objection, instructed the jury on future damages and on the use of the mortality tables. The jury returned a verdict assessing Price's damages at $70,000 and finding him 10 percent at fault and Sullivan 90 percent at fault. Judgment in the amount of $63,000 was entered for Price.
The district court affirmed and held that Price's disability, which was not merely subjective, was sufficient to justify introduction of the mortality tables and that the jury instructions were proper even though no medical evidence was presented.
We agree that the evidence submitted was sufficient to warrant the introduction of the mortality tables and the giving of the challenged instructions. It was not the trial court's duty to determine the weight or sufficiency of the evidence bearing on the continuing or permanent nature of the injuries since the credibility of the testimony and the weight of the evidence was for the jury to decide. Corbett v. Dade County Board of Public Instruction, 372 So.2d 971 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1192 (Fla. 1980); William Penn Hotel v. Cohen, 101 So.2d 404 (Fla. 3d DCA 1958).
It previously has been established that evidence of permanent injury is an absolute prerequisite to the admission of mortality tables. Seaboard Air Line Railroad Co. v. Ford, 92 So.2d 160 (Fla. 1955). This prerequisite was clearly met in this case when Price exhibited to the judge and jury his permanent scar from the surgical insertion and removal of the pin in his shoulder. The court properly admitted the mortality tables on the basis of this showing of permanent injury and properly instructed the jury on permanency as it relates to the mortality tables and their introduction.[1]
Defendants also challenge the jury instruction on future damages[2] on the basis *244 that there was no medical testimony to establish the future effects of the injury. None of the decisions cited to us by defendants have definitively held that medical testimony is a prerequisite to a jury instruction on future damages.
The Second District Court of Appeal, in Tampa Transit Lines, Inc. v. Smith, 155 So.2d 557 (Fla. 2d DCA 1963), held that future damages were allowable although no expert testified that plaintiff's disability would continue into the future. In Grant v. Hoffman, 151 So.2d 287 (Fla. 2d DCA 1963), cert. denied, 155 So.2d 694 (Fla. 1963), the Second District held that the trial court had erroneously stricken plaintiff's requested instruction as to her future damages of diminished earning capacity on the basis that there was no medical evidence before the jury that plaintiff's injuries would reduce her earning capacity in the future.
Recently in Corbett v. Dade County Board of Public Instruction, the district court held that the trial court erred in refusing to instruct the jury on future damages. The court determined that the question of whether evidence is sufficient to warrant an instruction on future damages varies with the facts of each case and that the case before it was governed by cases holding that recovery is justified, even in the absence of expert testimony of the likelihood of future damages because "the nature of the injury, its duration, and lack of recovery at the time of trial, make it clear that pain and suffering will continue for at least sometime into the future." 372 So.2d at 973. The court pointed out that although the testimony relating to plaintiff's condition resulting from the injury was contradicted by testimony of other witnesses, this did not disentitle plaintiff to an instruction on future damages since it was not the province of the judge to determine the weight or sufficiency of evidence bearing on continuing or permanent injuries. The district court concluded:
The plaintiff was entitled to an instruction as to any claim legally supported by a view of the evidence, even though contradicted, which the trier of fact had a right to accept, see Menard v. O'Malley, 327 So.2d 905, 907 (Fla. 3d DCA 1976). Since the jury could properly have concluded that Dori's alleged damages would not cease immediately upon the return of the verdict, the refusal to instruct on future damages was reversible error....
372 So.2d at 974.
We hold that expert medical testimony is not required as a prerequisite to a jury instruction on future damages. From the uncontradicted evidence of the nature of Price's injury, its duration, his resultant demotion, and lack of recovery at the time of trial, the jury could have concluded with reasonable certainty that the injury's consequences would continue into the future. We hold that the jury instruction on future damages was appropriate.
Accordingly, we approve the result reached by the district court affirming the judgment of the trial court.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ENGLAND and McDONALD, JJ., concur.
ADKINS, J., concurs in result only.
NOTES
[1] The trial court instructed the jury as follows:

If the greater weight of the evidence shows that Mr. Price has been permanently injured, you may consider the life expectancy in the mortality table which has been introduced for this purpose. Such table is not binding on you, but may be considered together with other evidence in the case bearing on his health, age, and physical condition before and after the injury, in determining the probable length of his life.
[2] As to future damages, the trial court instructed the jury, as follows:

[I]f you find for the Plaintiff, you shall state in your verdict the amount of money that the greater weight of evidence shows will fairly and adequately compensate him for his loss, injury or damage, including any such damage that he is reasonably certain to experience in the future and you shall consider the following elements:
Any bodily injury sustained by Mr. Price and any resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future.
There is no exact standard for fixing the amount of compensation to be awarded on account of such elements of damage. Any such award shall be fair and just in the light of all the evidence in the case.
You should also consider any earnings or working time lost in the past or any loss inability to earn money in the future.