SCHOFIELD *v.* UEBEL, ET VIR

[No. 324, September Term, 1968.]

*Decided June 30, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*William H. Clarke* for appellant.

*James S. McAuliffe, Jr.*, with whom were *Heeney, McAuliffe & McAuliffe* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Stung by judgments totaling $73,210.00 in a case where he admitted liability and where the medical expenses arising out of an automobile accident were only $808.86, appellant (Schofield) complains to this Court, raising four questions: (1) whether plaintiffs sustained their burden of proof when there was a marked difference between the percentages of estimated disability presented by plaintiffs' experts; (2) whether the trial court abused its discretion in denying Schofield's motion for a new trial, or, in the alternative, for a remittitur in the light of the disparity between the judgments and the monetary damages of plaintiffs; (3) "Whether the impatience openly displayed by the Court toward Appellant's counsel and the sole witness who testified for Appellant intimidated the jury, hampered appellant's counsel in the trial of the case, and otherwise deprived the appellant of a trial in a calm and unhurried judicial atmosphere"; and (4) whether the judgment in the amount of $20,000.00 for the husband can be sustained as an item for damage for the loss of society, affection and assistance. We find all of Schofield's contentions to be without merit.

This case arises out of an automobile accident. Appellees, Wilhelmina Uebel and Robert G. Uebel, her husband, (Uebel) were passengers in an automobile which was struck from the rear by an automobile driven by Schofield. Schofield admitted liability and the jury considered only the question of damages.

## I.

Uebel presented two physicians to testify as to the injuries sustained by Mrs. Uebel. One was the family physician who had regularly treated Mrs. Uebel since 1951.

He testified as to treatment beginning immediately after the accident, his referral for physiotherapy treatment, his referral for examination by an orthopedic surgeon, the fact that during a substantial period of time she was obliged to wear a back brace and as to her continuing disability. After having indicated that Mrs. Uebel had sustained a permanent partial disability he was asked the extent of this disability, to which he replied:

"This is very difficult to measure. I cannot give an exact percentage of the disability. The back is essential as far as the body or the function of the body is concerned in a person. I think you will have to relate disability to a person's duties. I can find no satisfactory manner by consulting books as to how you can give any percentage of disability in a situation such as this. This patient every time she lifts anything, every time she moves, every time she does many of her household tasks is in danger of suffering for it for a period of many weeks or months. She does suffer—to the best of my knowledge she does suffer considerable distress on a constant basis. I cannot back up my professional opinion by any published work, but I would say she is at least 50% disabled."

The orthopedic surgeon to whom Mrs. Uebel was referred by her family physician testified that using as a guide a manual for orthopedic surgeons published by the American Academy of Orthopedic Surgery to be used as a guide in evaluating the percent of disability with any given condition he concluded that Mrs. Uebel "had a 10% permanent partial disability of the whole body due to the cervical spine prob-sacral (sic) spine, or a total of approximately 20% total body permanent partial disability", this being 20% of the body as a whole.

Schofield contends that the testimony of these two physicians was so inconsistent on the extent of the partial permanent disability that it confused rather than assisted

or instructed the jury. Accordingly, Schofield claims that Uebel has not met his burden of proof. He cites in support of his position *Mundano v. Philadelphia Rapid Transit Co.,* 289 Pa. 51, 137 A. 104 (1927). That case does not support his position. There the plaintiff had a conflict between his experts, not as to the extent of disability, but as to whether a certain ulcerated condition came from the accident. Consequently, the Pennsylvania court said the evidence as to the ulcerated condition of the heel should have been excluded, stating:

> "If plaintiff calls more than one expert, there must be no *absolute contradiction in their essential conclusions * * *.*" (emphasis added) *Id.* at 60.

Here the experts were in agreement that the accident caused the disability, their disagreement being as to the extent of the disability resulting from the accident.

We do not understand the cases to hold that a plaintiff has failed to meet his burden of proof because of a variance in the opinion of his experts as to the damage sustained. See, for example, *Mathiesen Alkali Works v. Redden,* 177 Md. 560, 10 A. 2d 699 (1940), where one of the plaintiff's examining physicians testified that he found no injury, while the other testified that there was a sixty percent loss of hearing. There the Court said:

> "[T]he evidence in the case was undoubtedly legally sufficient to support a finding of permanent injury; therefore there was no error in granting either the plaintiff's withdrawn prayer, or the substituted prayer, so that defendant could not possibly have been injured by the withdrawal of that prayer even if the court erred in permitting its withdrawal. But there was no error in that ruling, since the matter rested in the sound discretion of the court." *Id.* at 567.

Here, however, any complaint Schofield may have does not appear to be preserved for our review. Careful ex-

amination of the record reveals no objections to the testimony of either expert. Schofield made no motion for a directed verdict. The matter was tried before a jury. Under Maryland Rule 885 we will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court.

## II.

Schofield contends that the trial court abused its discretion in denying his motion for a new trial or, in the alternative for a remittitur claiming that the judgments totaling $73,210.00 were far in excess of the totality of the damages which Uebel admitted in argument to the jury had been proven and that the verdicts were so excessive, that they should have been a shock to the conscience of the court. He then attempts to compare a number of verdicts in other cases, state and federal, with the verdict here rendered. He does not mention the recent case of *Abraham v. Moler,* 253 Md. 215, 252 A. 2d 68 (1969), in which the appellants sought the overthrow of a $100,000.00 judgment against them, claiming it was excessive. There the case was tried by the court without a jury. We there said at page 219:

> "Ordinarily the question whether the verdict is excessive is not a matter for review by this Court."

citing *Rephann v. Armstrong,* 217 Md. 90, 141 A. 2d 525 (1958). In that case this Court said:

> "The trial court refused a new trial sought on the ground that the verdicts were excessive, and it is not our function or right, even were we disposed to do so, to pass on his action in this respect." *Id.* at 93.

We re-affirm that decision.

## III.

By agreement between counsel the plaintiff's case was suspended at noon on the first day of a two day trial in

order that the defendant's expert might take the stand. Counsel states the trial judge was previously advised of this agreement, although a reading of the record is susceptible of an inference that his first knowledge of the agreement came at noon. The normal hour for the luncheon recess of the trial court was 12:30 P.M. Schofield says that he called his expert at that hour because the expert had a two o'clock appointment at his office in Washington. The trial was in Frederick. Although Schofield contended at argument before us that he was obliged because of the court's attitude to rush through his examination of the expert, it is noted that it was two minutes before one when the redirect examination was concluded. It would appear, therefore, that since the witness was due in Washington at 2:00 P.M., that any undue haste in examination was brought about by that time schedule and not by the court. Schofield refers to the fact that his expert was called at noon and says:

> "This apparently was a source of irritation to and led to expressions of impatience on the part of the Court, both in the hearing of—and out of the hearing of—the jury, stemming from the fact that Dr. Eisenberg's testimony on both direct and cross examination carried the Court beyond its customary 12:30 p.m. luncheon recess.
>
> "The Court informed counsel for the Appellant in the hearing of the jury that its customary luncheon period was being infringed upon and insisted that the testimony of this witness be completed as quickly as possible. This, it is respectfully submitted, downgraded the testimony in the judgment of the jury since it could not help but feel that the Court was hurrying along this testimony because what the Appellant's expert doctor had to say was of little importance."

The short answer to this contention is that there is nothing in the record to sustain this position. The court's

only comment in the presence of the jury was made as its normal hour for a luncheon recess approached. It was as follows:

> "THE COURT: Now you are running into our lunch hour.
>
> "That's the only thing I want to warn you about. You said you wanted this man here at 12 o'clock. It is 12:30. I eat at 12:30.
>
> "MR. CLARK: I would only want to ask him about one x-ray in this bunch.
>
> "THE COURT: Go ahead; we will proceed for a while, for a few moments."

At the bench after further examination, out of the hearing of the jury, the court did say to counsel:

> "What did you bring this man here at this time for? Why didn't you bring him earlier? I am not going to hold this jury here."

Nevertheless, he did hold the jury until two minutes before one when testimony was completed. Moreover, there was no motion for a mistrial. Accordingly, the matter is not preserved for our review.

## IV.

Schofield next contends that there was no evidence to sustain a judgment of $20,000.00 for the loss of consortium. There was no motion by Schofield under Rule 552 for a directed verdict. "The sufficiency of the evidence to authorize a recovery will not be reviewed on appeal unless the question has properly been presented to the lower court." *State v. Heffelfinger*, 226 Md. 493, 495, 174 A. 2d 336 (1961). Accordingly, this point is likewise not preserved for our review, although we believe there was sufficient evidence to sustain the judgment.

*Judgments affirmed, appellant to pay the costs.*