56 A.3d 541

**Ronald L. BRADLEY, Jr.**

v.

**Dara Lawrence BRADLEY.**

**No. 560, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Nov. 27, 2012.

252

Francis A. Pommett, III (Nathanson & Pommett PC, on the brief) Baltimore, MD, for appellant.

Peter T. McDowell, Towson, MD, for appellee.

Panel: EYLER, DEBORAH S., GRAEFF, BERGER, JJ.

BERGER, J.

On February 17, 2011, a jury in the Circuit Court for Baltimore County awarded judgment in favor of Dara Lawrence Bradley, appellee, and against Ronald L. Bradley, Jr., appellant. The combined monetary judgment totaled $469,000 in compensatory and punitive damages for the torts of intentional misrepresentation, negligent misrepresentation, intentional infliction of emotional distress, and two counts of battery. This timely appeal followed.

Appellant presents four questions for our review, which we have rephrased as follows:

I. Whether the circuit court erred by failing to dismiss appellee's claims for intentional and negligent misrepresentation.

II. Whether there was sufficient evidence to support the claim for intentional infliction of emotional distress.

III. Whether the circuit court abused its discretion in declining to order a mistrial.

IV. Whether the circuit court abused its discretion in denying appellant's motion for a continuance of the trial.

For the reasons set forth below, we affirm the judgment of the Circuit Court for Baltimore County.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant and appellee met in November 2003 at appellee's place of employment, the Kennedy Krieger Institute ("KKI"). Appellee was part of a team responsible for the care of appellant's son, and had frequent contact with appellant. At the time, appellant was married and had three children. In June or July of 2004, after appellant's son was discharged from KKI, appellant told appellee that he had been separated from his wife for several years and that he had instituted divorce proceedings. A courtship ensued between appellant and appellee. In fall of 2004, appellant moved in with appellee, apparently upon appellant's request. On December 31, 2004, appellant proposed to appellee, but asked her to keep the proposal a secret so as to not prolong the divorce proceedings. In 2005, appellant told appellee that he had hired a new lawyer to handle his divorce proceedings. At appellant's request, appellee quit her job at KKI in order to assist with caring for appellant's children.

Appellant made various representations to appellee regarding problems with his divorce proceedings, such as difficulties with his wife, and that his purported attorney had a heart attack. In September 2006, appellant announced that his divorce was finalized. He produced a plaque that contained a "Judgment of Absolute Divorce," which included the circuit court's gold seal, the typed name of a judge, and the forged signature of the clerk of court. In October 2006, appellant again proposed to appellee, this time in public. On April 11, 2007, the couple was married at a wedding chapel in Las Vegas, Nevada before about 30 of appellee's friends and family who traveled to Las Vegas for the wedding.

In 2008, after two incidents of battery, appellee searched the Maryland Judiciary Case Search website to research previous domestic violence cases involving appellant. Appellee then discovered that appellant's divorce was not listed in the database. Appellee hired an attorney, who confirmed that appellant was not divorced. Appellee confronted appellant, who eventually confessed that he was still married to his first wife. The two separated, and appellee began therapy with a psychiatrist. Appellee was diagnosed with anxiety, depression, post-traumatic stress disorder, and adjustment disorder. Appellee's psychiatrist prescribed several medications and therapy for her treatment.

In April 2008, appellee secured a part-time job as a nurse, working 28 hours per month. Thereafter, appellee sought to reconcile with appellant, and indicated her desire that appellant divorce his first wife, annul appellant and appellee's marriage, reimburse the wedding guests for their expenses, and "re-marry" appellee. Appellant moved back into appellee's house briefly. Appellant filed for divorce from his first wife, but did not fulfill appellee's other requests. In May 2008, appellant moved out of appellee's house.

Appellee filed a complaint for annulment of the marriage on May 23, 2008. Appellee and two other witnesses testified that after filing the complaint, appellant attempted to make verbal and written contact with appellee, followed appellee in his vehicle, drove his vehicle past appellee's house, sat in his vehicle in appellee's driveway and a neighbor's driveway, flickered his vehicle lights on and off near appellee's house in the middle of the night, and stared at appellee from behind a fence near her house. In August 2008, the police responded to an altercation that occurred between the parties. Thereafter, appellee obtained a protective order against appellant, but he continued to make contact with appellee until the summer of 2010.

In August 2008, appellee amended her complaint for annulment to include various tort claims. The first trial date in appellee's case was scheduled on December 7, 2009. The case

was postponed twice. The third and final trial date was set for February 7, 2011.

Daniel J. Hanley, Esquire ("Mr. Hanley") entered his appearance on behalf of appellant on July 1, 2008. He completed all discovery in the case in preparation for appellant's defense. On July 13, 2010, Mr. Hanley wrote a letter informing appellant that he was no longer willing to continue as appellant's attorney in the case. The letter advised appellant to either notify the circuit court clerk in writing of his intention to represent himself, or have another attorney enter his or her appearance to represent him. Mr. Hanley's letter also expressly instructed appellant to provide the clerk with a current mailing address. One month later, Mr. Hanley filed a motion to strike his appearance with the court, which was ultimately granted on October 20, 2010. Mr. Hanley's appearance was stricken on October 22, 2010, and the clerk mailed the required notice to appellant's last known address that same day. The notice was returned as undeliverable.

On January 12, 2011, January 19, 2011, and January 29, 2011, appellant filed motions seeking a continuance of the trial. The basis for each motion was to allow time for appellant to sell his home and use the proceeds to hire an attorney. The circuit court administrative judge denied all three motions for lack of good cause. On the first day of trial, appellant orally raised a fourth request for a continuance to obtain counsel for the same reasons previously cited. The trial judge indicated that appellant must present his request to the administrative judge, but noted that the administrative judge was on the bench, and therefore, unavailable. Appellant did not seek a continuance with the administrative judge.

Trial commenced, and appellee presented her case to the jury over a period of four days. Appellant did not move for judgment on any counts at the close of appellee's case in chief. After appellant presented his defense, the court asked the parties if there were any motions. Neither party presented any motion, and the trial judge gave jury instructions after closing arguments. On February 14, 2011, the jury returned a

verdict in favor of appellee in the amount of $287,000 in compensatory damages, aggregated for the misrepresentation counts and the count for intentional infliction of emotional distress. The jury also awarded $1,000 each for two counts of battery, and $180,000 in punitive damages. The trial court further granted appellee an annulment and denied appellant's claim for a marital award.

On March 4, 2011, appellant filed a "Motion for New Trial, Judgment Not Withstanding the Verdict, and to Alter or Amend Judgment" through newly retained counsel. Appellee timely responded. The trial court denied all relief. Appellant noted this appeal.

## DISCUSSION

### I. Validity of Misrepresentation Claims

Appellant argues that the intentional and negligent misrepresentation claims are simply a refitting of the abolished action for breach of promise to marry. The appellant further contends that the trial judge erred by failing to *sua sponte* dismiss the claims. Appellee argues that the misrepresentation claims constitute independent causes of action. Further, appellee maintains that this issue is not preserved for appellate review because it was not raised at trial, and because the motion for judgment notwithstanding the verdict ("JNOV") was invalid. We hold that this issue is arguably ripe for our review, and that the trial judge did not err in failing to *sua sponte* dismiss the claims.

### A. Waiver

■ First, we consider whether this argument is preserved for appellate review. In our view, the breach of promise to marry issue is arguably preserved for our review because it was decided by the trial court. This case involves a relatively unique situation in which the trial judge appropriately raised and decided various issues *sua sponte*, primarily due to appellant's *pro se* status. We normally will not address an issue "unless it plainly appears by the record to have been raised in

or decided by the trial court." Md. Rule 8–131(a). Our review of the trial court record shows that although appellant himself did not raise the breach of promise to marry argument, it was nevertheless "decided by the trial court." [1]

The trial judge expressly considered which of appellee's claims could properly serve as the basis for misrepresentation actions, and which claims were more appropriately construed as statutorily-barred actions for breach of promise to marry. The trial judge cited case law in support of her ruling, and both parties had an opportunity to address and challenge this ruling. The trial judge continually referred to the distinction between misrepresentation and breach of promise to marry claims throughout the trial, and on that basis carefully distinguished which evidence could be presented to the jury.

In particular, the trial judge initially addressed the distinction between breach of promise to marry and the other tort claims during pre-trial proceedings:

> Some of these are going to be legitimate claims ... but some of them are going to have some significant legal hurdles.... On the breach of promise to marry issues ... the Maryland Statute under Family Law 3–102 is broad and it has been broadly construed. The case of *Miller v. Ratner* makes that abundantly clear, which is at 114 Maryland App. 18 [688 A.2d 976]. What *Miller v. Ratner* also does though is says that there may be claims where the issue is precisely the issue in this case, there is not so much the breach of a promise to marry but a fraud relating to the ability to enter into a valid marriage[,] and if those are the circumstances, which is the allegation here, some of those causes of actions [sic] may survive a motion, but not all.

---

1. Because we conclude that this issue was preserved for our review by virtue of being decided by the trial court, we do not address appellee's argument that the motion for JNOV was insufficient to preserve the issue for appellate review. We do, however, address the JNOV argument in the context of appellant's challenge to the intentional infliction of emotional distress judgment. *See infra,* Part II.

At trial, the judge ruled that certain evidence was barred because it pertained only to the statutorily-barred cause of action for breach of promise to marry:

THE COURT: All of their plans and what they intended to do, there are certain things that are legitimate in your cause of action[,] but broken expectations of not getting married is an overbroad area of damages[,] which is what I alluded to yesterday.

THE COURT: ... you can't as an element of damage in those, get into what are essentially breach of promise to marry damages. [The cases] recognize ... a distinction in the type of damages. The intentional infliction of emotional distress, it's fair game. The reaction to her when she finds out that she's not legitimately married and that this is a sham or a fraud, completely fair game. But I thought I would be married and have three kids and live on the Eastern Shore, those are the types of damages that that line of cases specifically says aren't recoverable.

[APPELLEE'S COUNSEL]: I disagree with Your Honor.

THE COURT: You may disagree but that's my ruling.

\* \* \*

THE COURT: The statements of what things talked about when people are in an early dating relationship, none of that, I mean every divorce case has a breakdown of expectations based on what people talked about as their plans for their future. These cases recognize that those are not compensable elements of damages. That, that the dismay, the destruction of her, you know, image of where she was, the breakdown afterwards when she finds out it's a sham, those are what *Vance* and the other cases recognize are compensable.

\* \* \*

THE COURT: ... the fraud is when he says ... that his divorce is final and he marries her[,] and that's a sham. Elements of damages from there[,] and her discovering[,] and the intentional infliction of emotional distress based on those things, fair game. But my life didn't turn out the way

I thought it was with a man that when we said we're going to do those things in dating, that's a whole different thing and it's not compensable.

\* \* \*

THE COURT: I'm ruling that the representation that he made that was false and fraudulent was [']I'm divorced.['] That's what you've shown. There's nothing to show that this other stuff was intent to defraud, in fact the witnesses say to the contrary, they were happy in love making these plans together.

Accordingly, we hold that this is a rare situation in which the appellant did not raise the issue at trial, but it was nevertheless decided by the trial court. On that basis it was preserved for appellate review.[2]

## B. Standard of Review

■ The appropriate standard of review is *de novo*, because the trial court decided that the misrepresentation claims were not barred under Maryland case law. *See Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175 (2006) ("[W]here an order [of the trial court] involves an interpretation and application of Maryland ... case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review.").

## C. Discussion

■ The elements for negligent and intentional misrepresentation claims are well-established under Maryland law.

---

**2.** This Court also has discretion under Md. Rule 8–131(a) to address an unpreserved issue. This discretion is rarely exercised because it is preferred that there be a proper record with respect to the challenge, and that the parties and trial judge are given an opportunity to consider and respond to the challenge. *See Kelly v. State*, 195 Md.App. 403, 431–32, 6 A.3d 396 (2010), (quoting *Chaney v. State*, 397 Md. 460, 468, 918 A.2d 506 (2007)), *cert. denied*, 417 Md. 502, 10 A.3d 1181, *cert. denied*, —— U.S. ——, 131 S.Ct. 2119, 179 L.Ed.2d 912 (2011). In this case, the parties and trial judge considered the issue, and there is a record. This further suggests that the issue was preserved for review, and, at the very least, weighs in favor of exercising our discretion—if necessary—to address the merits.

"[A] cause of action for negligent misrepresentation exists where one relies on the statements of another who negligently volunteers an erroneous opinion, intending that it be acted upon; the defendant must either know or should know that loss or injury likely will result if the erroneous representation is acted upon." *Vance v. Vance*, 286 Md. 490, 496, 408 A.2d 728 (1979). The elements of the "cause of action in what is variously known as fraud, deceit, or intentional misrepresentation" are:

> (1) [T]hat a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with [ ] reckless indifference . . .; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresentation.

*B.N. v. K.K.*, 312 Md. 135, 149, 538 A.2d 1175 (1988) (citing *Suburban Properties Mgmt. v. Johnson*, 236 Md. 455, 460, 204 A.2d 326 (1964)). False statements regarding marital status in a bigamy context are actionable as the tort of misrepresentation. *Vance*, 286 Md. at 498–501, 408 A.2d 728 (affirming judgment for negligent misrepresentation in bigamy case). Misrepresentation damages may include emotional and psychological distress. *See id.* at 498–501, 408 A.2d 728 (holding that spontaneous crying, difficulty sleeping and socializing, and depression constituted damages resulting from misrepresentation).

■ Maryland does not recognize a cause of action for a breach of a promise to marry. *See* Md.Code Ann. (1984, 2009 Repl.Vol.), § 3–102(a) of the Family Law Article ("[u]nless the individual is pregnant,[3] an individual: (1) has no cause of action for breach of promise to marry. . . ."). This prohibition

---

3. There was no evidence presented at trial that the appellee was pregnant.

bars "any claim predicated upon [a] defendant's alleged failure to live up to his promises of marriage." *Miller v. Ratner,* 114 Md.App. 18, 45, 688 A.2d 976 (1997). The policy is to protect the "pure 'change of mind' case[s]" where a defendant promises to marry but later changes his mind and refuses to marry. *Id.* at 46, 688 A.2d 976.

This Court, in *Miller v. Ratner,* contemplated the particular distinction between breach of promise to marry and tort causes of action. We concluded, albeit in *dicta,* that there are situations in which there may be intentional or negligent misrepresentations related to promises to marry that constitute independent tort causes of action:

[Certain] actions may well constitute a deceit that might . . . support a tortious action because a person would fraudulently be caused to change his or her position in reliance on an intentional misrepresentation of the promisor's then present status. It would not be an action for failure to keep a promise to marry, but an action grounded in deceit and fraud. The first instance, failing to keep a promise to marry, is a breach of promise to marry; the second, making a misrepresentation of one's marital status in order to cause one to change her position may, in some circumstances, constitute the tort of deceit.

*Id.*

■ Here, appellee's causes of action were for misrepresentation, not breach of promise to marry. As in *Vance,* appellant's claim that he was divorced constituted a false statement, and such statements are actionable in tort. We see no reason to contort this claim into one for breach of promise to marry. The tort claims do not arise from appellant's failure to marry appellee, but from appellant's negligent and/or intentional conduct in telling appellee that he was divorced when in fact he was married. Indeed, appellant here sought to marry the appellee. Nevertheless, he was not in a legal position to marry her because he was still married to his wife at the time he traveled to Las Vegas to marry the appellee.

The resulting damages here are almost identical to those in *Vance.* Moreover, the trial judge distinguished between breach of promise to marry and tort claims at trial, and on that basis carefully determined which evidence could be presented to the jury. Accordingly, the trial judge properly interpreted Maryland case law, and did not err by failing to dismiss the misrepresentation claims.

## II. Sufficiency of Evidence as to Intentional Infliction of Emotional Distress Claim

Appellant next argues that there was insufficient evidence for the claim of intentional infliction of emotional distress to be sent to the jury. Appellee contends that this argument is not preserved for appellate review, despite appellant's assertions that it challenged the sufficiency of evidence in a motion for new trial and for JNOV. We agree that this issue is not preserved for our review.

It is well established that "[t]he sufficiency of the evidence to authorize [tort] recovery will not be reviewed on appeal unless the question has properly been presented to the lower court." *Schofield v. Uebel,* 254 Md. 402, 408, 254 A.2d 655 (1969) (quoting *State v. Heffelfinger,* 226 Md. 493, 495, 174 A.2d 336 (1961)); *cf. K & K Mgmt., Inc. v. Lee,* 316 Md. 137, 171, 557 A.2d 965 (1989) (sufficiency issues preserved because they were raised at trial in appellants' motion for judgment).

A sufficiency challenge is not preserved if it is raised for the first time in a motion for new trial. *Univ. of Md. Med. Sys. Corp. v. Gholston,* 203 Md.App. 321, 341, 37 A.3d 1074 (2012), *cert. denied,* 427 Md. 65, 46 A.3d 406 (2012). Likewise, a sufficiency challenge is not preserved by a motion for JNOV where, as here, there was no motion for judgment at the close of evidence. Pursuant to Md. Rule 2–532(a):

In a jury trial, a party may move for judgment notwithstanding the verdict only if that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion.

The Court of Appeals has mandated strict compliance with this Rule. *See Gen. Motors v. Seay,* 388 Md. 341, 361, 879 A.2d 1049 (2005) (holding that "failure to renew the motion [for judgment at the close of evidence] resulted in the loss of its right to file a motion for JNOV"). Accordingly, "an argument on the sufficiency of the evidence not made during trial by means of a motion for judgment cannot be raised in a motion for JNOV." *Univ. of Md. Med. Sys. Corp.,* 203 Md.App. at 341, 37 A.3d 1074 (citing Md. Rule 2–532(a)). *See also Schofield,* 254 Md. at 408, 254 A.2d 655 (holding that because there was no motion for a directed verdict, the appellant had not preserved the issue of sufficiency of evidence in a personal injury trial.).

We, therefore, hold that because appellant argues only that he challenged the sufficiency of evidence in a motion for new trial and for JNOV, appellant's argument is not preserved for our review.

## III. Mistrial

Appellant next argues that the trial court abused its discretion in failing to order a mistrial after appellee's counsel asked two questions regarding evidence that had been ruled inadmissible. Appellant contends that the curative instruction to the jury was not sufficient because "the damage had already been done ... [t]he issues in the case were completely muddled...." Appellee argues that appellant waived this argument, and that regardless, appellant has not articulated any prejudice so as to warrant a mistrial. We hold that the trial court did not abuse its discretion in declining to order a mistrial.

## A. Waiver

 Once again, it is dubious whether this argument is preserved for appeal. Appellant objected to two questions during his cross-examination. In making the second objection, appellant stated: "Objection and a Motion to Dismiss." The trial judge spoke to appellant and appellee's counsel privately, warning appellee's counsel to discontinue the objec-

tionable line of questioning. The trial judge stated: "You want to be heard on a Mistrial Motion? I'll be happy to hear from you." Appellant replied: "I do, Your Honor. The jury's been tainted and it's not the first time he's brought it up." The trial judge then indicated that she did not believe there were grounds for a mistrial at that point, but that additional improper questioning could warrant a mistrial. As with the first issue on appeal, we conclude that the mistrial issue was arguably decided by the trial court, and we therefore address the merits.[4]

## B. Standard of Review

The decision whether to grant a mistrial rests within the trial court's discretion. *See Med. Mutual Liab. Ins. Soc'y. of Md. v. Evans*, 330 Md. 1, 19, 622 A.2d 103 (1993) ("Whether to order a mistrial rests in the discretion of the trial judge, and appellate review of the denial of the motion is limited to whether there has been an abuse of discretion."). *See also Parker v. State*, 189 Md.App. 474, 493, 985 A.2d 72 (2009).

## C. Discussion

In reviewing the denial of a motion for mistrial on appeal, the court must make two determinations: "[F]irst, whether the moving party was prejudiced by the opposing party's conduct, comments or evidence; and second, whether the trial judge took sufficient curative measures to overcome that prejudice, or, whether the prejudice was so great that, in spite of the curative measures, the moving party was denied a fair trial." *Goldberg v. Boone*, 396 Md. 94, 115, 912 A.2d 698 (2006). "[I]mproper or prejudicial statements, remarks, or arguments of counsel generally are cured by reproof by the trial judge; to his discretion customarily is left the choice of methods to protect the fair and unprejudiced workings of the judicial proceedings and his decision as to the effect of that choice upon the jury[;] and only in the exceptional case, the blatant case, will his choice of cure and his decision as to its

---

4. *See supra,* Part I(A), discussing our waiver analysis in detail.

effect be reversed on appeal." *Id.* (quoting *DeMay v. Carper,* 247 Md. 535, 540, 233 A.2d 765 (1967)).

In *Washington v. State,* 191 Md.App. 48, 103, 990 A.2d 549, *cert. denied,* 415 Md. 43, 997 A.2d 792 (2010), we stated:

> The fundamental rationale in leaving the matter of prejudice vel non to the sound discretion of the trial [court] is that the [trial court] is in the best position to evaluate [any prejudice]. The [trial court] is physically on the scene, able to observe the matters not usually reflected in a cold record. The [trial court] is able to ascertain the demeanor of the witnesses and to note the reaction of the jurors and counsel to inadmissible matter. That is to say, the [trial court] has [its] finger on the pulse of the trial.

(Citation omitted).

 Prior to trial, appellant filed a motion *in limine* seeking exclusion of a sentence of probation before judgment that appellant received in connection with criminal charges for the forged divorce document. The trial judge ruled that the evidence was inadmissible under the Maryland Rules of Evidence. At trial, appellee's counsel asked appellant two questions about the criminal case: "Didn't you go to court in a criminal court concerning that document?" and "Aren't you on probation—". Appellant objected to both questions and did not provide answers. The trial judge sustained the objections and gave a curative instruction to the jury. The instruction indicated that if there were any questions that implied anything about other court proceedings, criminal or not, they were not to be considered by the jury.

Appellant has articulated no prejudice, much less prejudice so great that he was denied a fair trial. The trial court evaluated the questions on cross-examination and their impact on the trial. Further, the trial court took prompt corrective action with the jury. The trial court reasoned that a curative instruction was appropriate and would cure any prejudice. We hold that the trial court provided a curative instruction that was most appropriate under the circumstances. As such,

the trial court did not abuse its discretion in declining to order a mistrial.

## IV. Trial Continuance

The final issue on appeal is whether the trial court erred by refusing to grant a continuance of the trial so that appellant could sell his home and obtain new counsel with the proceeds from the sale. In support of his argument, appellant notes that he received no official court notice indicating that his attorney's appearance had been stricken because the notice was returned to the court as undeliverable. Additionally, appellant argues that even if he had received official notice, it would have been "almost impossible" for any attorney to prepare for his complex trial at that point. Appellee counters that the court's notice was adequate because the court complied with the applicable Maryland Rules. Appellee also points out that appellant received actual notice of his attorney's withdrawal more than six months before trial. Finally, appellee contends that the impossibility of a new attorney preparing for trial is without merit because appellant's first attorney completed all discovery, making it feasible for new counsel to prepare for trial. We agree that the circuit court did not abuse its discretion in declining to grant a continuance.

### A. Standard of Review

The proper standard of review is abuse of discretion. *See Neustadter v. Holy Cross Hosp. of Silver Spring, Inc.*, 418 Md. 231, 240, 13 A.3d 1227 (2011) (holding that a request to continue a trial date is subject to an abuse of discretion standard).

### B. Discussion

Pursuant to the Maryland Rules, "[o]n motion of any party or on its own initiative, the court may continue a trial or other proceeding as justice may require." Md. Rule 2–508(a). We routinely defer to the trial court's sound discretion in deciding whether to grant a continuance. *See, e.g., Serio v. Baystate Props., LLC*, 203 Md.App. 581, 39 A.3d 131 (2012),

*cert. denied,* 426 Md. 428, 44 A.3d 421 (2012). In *Serio,* counsel notified her client that she was moving to strike her appearance, but Mr. Serio failed to obtain new counsel until just before trial. *Id.* at 594, 39 A.3d 131. At trial, Mr. Serio requested a continuance to allow his newly-retained counsel to prepare for trial, but the trial court denied the motion, finding that "to the extent that there might be prejudice to Mr. Serio by proceeding pro se ... it's his own fault." *Id.* We affirmed that ruling. *See also Das v. Das,* 133 Md.App. 1, 25, 754 A.2d 441 (2000) (where a party received a letter from his counsel 60 days before trial advising him of a motion to strike counsel's appearance, yet did nothing, the party "slept on his rights and lost the opportunity to protest [counsel's] withdrawal").

Here, as in *Serio,* appellant slept on his rights, and therefore, good cause was not demonstrated for a continuance. Appellant omits several important facts that severely undermine any argument to the contrary. First, appellant carefully avoids the issue of actual notice in his brief, vaguely stating that he only *"eventually* realized that *the court* had stricken the appearance of Mr. Hanley[,] and on January 12, 2011, filed a letter requesting a postponement of the trial date to obtain an attorney." (Emphasis added). In reality, appellant was on actual notice of his attorney's withdrawal more than six months prior to trial, when Mr. Hanley sent him a letter to that effect. Moreover, Mr. Hanley's letter specifically advised appellant to update his address with the court. Finally, Mr. Hanley completed all discovery prior to withdrawing as counsel. It was more than feasible for new counsel to prepare for trial during those six months. The trial court did not abuse its discretion in finding no good cause to grant a continuance.

The lack of court notice regarding the withdrawal of appellant's counsel is of little significance because the circuit court fully complied with the Maryland Rules in striking the appearance of appellant's former counsel. Md. Rule 2–132 provides in pertinent part:

> (b) ... the motion [to withdraw] shall be accompanied by the ... moving attorney's certificate that notice has been mailed to the client of the attorney's intention to move for

withdrawal and advising the client to have another attorney enter an appearance or to notify the clerk in writing the client's intention to proceed in proper person.... The court may deny the motion if withdrawal of the appearance would cause undue delay, prejudice, or injustice.

(c).... When the appearance of the moving attorney is stricken and the client has no attorney of record and has not mailed written notification to the clerk of an intention to proceed in proper person, *the clerk shall mail a notice to the client's last known address* warning that if new counsel has not entered an appearance within 15 days after service of this notice, the *absence of counsel will not be grounds for a continuance.* The notice shall also warn the client of the risks of dismissal, judgment by default, and assessment of court costs.

(Emphasis added). Here, the attorney filed a proper motion under Md. Rule 2–132(b). The circuit court sent the notice required under Md. Rule 2–132(c) to appellant's last known address. Nothing further was required under the Rules.

For the foregoing reasons, we affirm the judgment of the Circuit Court for Baltimore County.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**